GARY Y. LEUNG (Cal. Bar No. 302928)
Email:  leungg@sec.gov
DOUGLAS M. MILLER (Cal. Bar No. 240398)
Email:  millerdou@sec.gov
YOLANDA OCHOA (Cal. Bar No. 267993)

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Western Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>     vs.<br><br>RALPH T. IANNELLI and ESSEX CAPITAL CORPORATION,<br><br>              Defendants. | Case No. 2:18-cv-05008<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RECOMMENDATION THAT GEOFF WINKLER BE APPOINTED RECEIVER** |

Plaintiff Securities and Exchange Commission ("SEC") requests the appointment of a receiver over Defendant Essex Capital Corporation ("Essex" or "Defendant"), and any of its subsidiaries and affiliates.  The SEC requests that the receiver have the full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises, choses in action, books, records, papers, and other real or personal property, including notes, deeds of trust, and other interests in real property, belonging to, being managed by, or in the possession or control of the Defendant and any of its subsidiaries and affiliates.

The SEC is not seeking to have a receiver appointed over the individual Defendant Ralph T. Iannelli, but is only seeking a freeze of his assets.

The SEC recommends that Geoff Winkler of the Bates Group be appointed receiver in this action.  Attached as Exhibit 1 is a copy of a letter, which states his qualifications and the qualifications of his firm, and which includes a proposal to provide services as a receiver in this action, as well as additional information on his firm and their services.

Mr. Winkler sent the information attached as Exhibit 1 to the SEC at the request of counsel for the SEC in this action, who solicited this information in conformity with internal SEC procedures for selecting candidates to recommend for appointment by federal district courts as receivers in SEC actions.  The SEC obtained proposals from two other qualified receiver candidates as well and evaluated all three proposals before selecting Mr. Winkler as its recommended candidate for receiver.  If the Court desires, the SEC will provide information regarding these or other candidates.

The SEC is recommending Mr. Winkler for several reasons.  Mr. Winkler spent nearly eight years working as the lead receivership administrator for a receiver appointed in over a dozen federal equity receivership cases.  Mr. Winkler has served as interim CEO and CFO, and has experience managing the day-to-day operations of companies.  Mr. Winkler currently services as the Director of Bates Group's Fraud

and Forensic practice and has received his JD, MBA, and CFE.  As a Director of the Bates Group, Mr. Winkler will work with others who also have extensive experience providing receivership, forensic accounting, and other related receivership services.

In the SEC's experience, it is more economical to have a receiver that has such capabilities in-house, in contrast to a receiver that would need to hire, for example, a forensic accounting firm or other professionals to perform necessary receivership duties.  Moreover, Mr. Winkler and his firm have extensive experience with managing receivership entities, as is stated in the attached information, including a receivership company accused of defrauding over 12,000 investors and creditors for $1.1 billion in claims. Ultimately, the company was placed into bankruptcy to shed unprofitable investments and then restructured and sold, leading many of the investors to receive more than 100 percent of their original investment.  In another matter Mr. Winkler worked on, a credit card processing company was accused of unlawful trade practices by offering misleading and altered contracts related to processing fees and equipment leasing. Mr. Winkler helped take possession of the business, replaced all fraudulent contracts, wound down a dog racing operation, filed delinquent tax returns and ultimately sold the business, making all victims whole and writing a multi-million dollar check to the U.S. Treasury.

Mr. Winkler's regular hourly rate as a receiver is $350 per hour, which he will discount for this matter by 10%, to $315 per hour, which is reasonable, particularly in view of his substantial experience.   For these reasons, and because of the qualifications set forth in the proposal attached as Exhibit 1, the SEC respectfully recommends that the Court appoint Mr. Winkler as receiver in this matter.

Dated:  June 5, 2018

*/s/ Gary Y. Leung*
GARY Y. LEUNG
Attorney for Plaintiff
Securities and Exchange Commission

# **EXHIBIT 1**

(Receiver Proposal)



April 6, 2018

*Via email: leungg@sec.gov*

Gary Leung, Senior Trial Counsel
Securities and Exchange Commission
Los Angeles Regional Office
444 S. Flower Street, Suite 900
Los Angeles, CA 90071

Re:     Potential Receivership – Essex Capital Corporation and Ralph T. Iannelli

Dear Gary:

Thank you for the opportunity to prepare a proposal for the aforementioned potential receivership. The following information is intended to provide an overview of my team, the general steps we would anticipate taking in execution of this appointment, our experience and qualifications serving in fiduciary matters, the billing rates we charge for performing our services, and other information potentially relevant to this matter.

**Staffing**

*About Bates Group*

Bates Group's team of professionals and experts bring decades of practical senior regulatory, legal, compliance and business experience to bear on behalf of clients in regulatory, compliance, and litigation matters. Our team of highly credentialed practitioners, including individuals who have earned such designations as Certified Public Accountant, Chartered Accountant, Certified Fraud Examiner, Chartered Financial Analyst and Certified Valuation Analyst, are leveraged by our clients to conduct or participate in sensitive and complex regulatory and internal investigations. Our regulatory practice team has worked closely with regional and multi-national financial services corporations, major law firms, and federal and state regulators on hundreds of complex financial and securities industry cases.

We are often called upon to examine large datasets in conducting our investigations, or in assisting counsel or regulators in evaluating their own analysis. Our team includes individuals who bring a unique mix of financial industry knowledge and data science capabilities, which enables us to generate the highest possible added value for our clients. Whether it's a large-scale insider trading investigation or a focused examination into specific transactions and/or events, we use experienced programmers and forensic experts with financial industry, fraud examination and accounting backgrounds to form an effective team. Bates Group plays an integral role in helping parties understand the nature of the data being examined and presents its results in a format that the parties can easily interpret and explain, including investigations involving large and complex data sets.

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



*Proposed Receiver*

I am the Director of Bates Group's Fraud and Forensics practice, where I draw on my legal and financial industry experience across a diverse range of businesses to provide strategic and focused consulting as well as investigative and asset recovery analyses related to securities litigation and other sensitive business issues. Before joining Bates Group, I was a business consultant and turnaround professional where I gained extensive experience working with a wide array of businesses suffering financial, organizational or management issues. I often functioned as interim CEO, CFO, or COO while working to either restore the company to financial and organizational health or determine and execute the best plan to close the business and liquidate the assets for maximum value. Throughout this time I have worked closely with the SEC, FTC, state and federal agencies, as well as a host of local legal and business professionals. My professional credentials include Certified Fraud Examiner (CFE), Certified Insolvency and Restructuring Advisor (CIRA), and Certified Specialist in Asset Recovery (CSAR).

*Subject Matter Expert*

Steve Daughters specializes in leading fraud and forensic accounting engagements and testifying in litigation matters. His leadership experience includes corporate whistleblower investigations, complex commercial damages, royalty disputes, lost earnings and business interruption claims. Mr. Daughters has experience testifying as an expert witness in state and federal court matters. Previously, Mr. Daughters worked at the Bank of America Leasing and Capital Group (BALCG) within the Global Corporate Investment Bank (GCIB) of Bank of America. His various functions of BALCG consisted of working on all parts of the leasing deal:  origination, credit analysis, pricing, and syndication (equity and debt). As an equity syndicator, his responsibilities included raising capital through bringing in investors for lease agreements. Being a CPA, he was also involved with the complex modeling that determined the net present value of the deals. Examples of leasing transactions that he has been involved with include: leverage leases (on or off balance sheet), QTE's (Qualified Technological Equipment), LILO's (Lease-In, Lease-Out's), Lease-to-Service contracts (son of LILO's), and international structures.

*Bates Consultants & Experts*

Bates Group's consultants and testifying experts have a great range of backgrounds representing a wide variety of expertise. Our nationwide roster of over 120 quantitative and substantive consultants and experts span 250 unique areas of expertise. They support clients and their counsel in retail, institutional and complex securities and other financial services matters. They consult and testify in SEC and other regulatory matters; in FINRA, NFA, AAA, and JAMS and other arbitration forums; in state and federal court proceedings; and in insurance and actuarial matters. Our experts' unique histories cover all aspects of the financial industry, from industry practices to specific products. We pride ourselves on providing the highest level of expertise, and that commitment is reflected in the quality of our individual consultants and experts, who typically have 15+ years of industry experience within their field, followed by years of experience testifying as expert witnesses in numerous forums.

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



**Other Professionals**

*Legal Counsel*

To the extent that I determine that general receivership counsel is required, I anticipate engaging the firm of Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"). Allen Matkins is well-qualified to serve as receivership counsel in connection with this matter, and regularly serves as counsel for court-appointed receivers and other fiduciaries, including in enforcement actions brought by the SEC. Indeed, Allen Matkins is presently serving as receiver's or monitor's counsel in a number of enforcement actions brought by the SEC, including numerous matters in California. I have also confirmed that Allen Matkins has experience in equipment leasing and financing matters, both as counsel for receivers operating and liquidating leasing entities, as well as working directly with both leasing and financing entities. Finally, Allen Matkins has agreed to discount its attorneys' fees on this matter by 10% for the duration of the receivership.

*Tax Accountants*

In the event that I am obligated to file tax returns, have other tax related obligations, or need tax advice, I anticipate retaining Miller Kaplan Arase LLP to assist me. Miller Kaplan Arase has experience working on receivership cases and understands the Qualified Settlement Fund nature of the receivership estate. I will obtain a formal proposal from Miller Kaplan Arase in the event that these services become necessary.

*Computer Forensics*

In many cases, it may be necessary to duplicate digital storage devices in order to preserve evidence or locate assets. If necessary, I would propose hiring Elluma Discovery, a Southern California-based computer forensics firm, to assist me, as they have experience in and understand the intricacies of working on receivership cases. I will obtain a formal proposal from Elluma Discovery in the event that these services are necessary.

I am sensitive to the costs associated with hiring legal counsel, tax accountants and computer forensic experts and will only do so if necessary to effectuate the orderly administration of the receivership estate. Prior to seeking concurrence from the Commission and approval from the court, I will perform a cost-benefit analysis to quantify the decision, to the extent possible, and maximize the benefit to the estate and return to investors.

All professionals retained by me will be required to follow my same billing practices, which are outlined below and meets or exceeds the Securities and Exchange Commission's *Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (SFAR)*.

---

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



**Anticipated Steps**

Upon appointment as Receiver, and throughout the duration of my appointment, I would anticipate taking the follow steps to ensure the orderly and cost-effective administration of the receivership estate:

- take custody and control of all receivership locations;
- isolate receivership computer systems to prevent unauthorized access;
- if warranted, forensically image all appropriate computers, phones, cloud based networks and portable media devices;
- preserve and document other sources of evidence;
- analyze and assess immediate financial issues, including, but not limited to payroll, insurance, operating expenses, credit cards, wire transfers and others;
- divert mail collection;
- identify and freeze all bank, brokerage, or securities related accounts;
- file and/or record the Order of Appointment, pursuant to 28 USC §754 in all jurisdictions where assets are located;
- identify and seize all personal and real property in the name of receivership defendants;
- serve notice of Temporary Restraining Order and Asset Freeze on all financial institutions, employees, vendors, landlords, investors and other interested third parties;
- immediately cease all fund raising and investment activities, if applicable, including monthly and quarterly payments and payments upon maturity;
- interview key parties to better understand business operations, fund raising activities and other information to assist in the orderly administration of the receivership estate;
- quickly analyze and assimilate business operations, develop pro forma financials to determine short, medium and long-term profitability of continued operations and, with the assistance of the parties, perform a cost-benefit analysis of continued operations versus shut-down of the business and then execute on the strategy that is decided;
- based on the strategy selected, either effectuate the wind-down of the existing business or position the receivership entities for continued operations, including setting up new operational accounts, a review of current facilities, staffing, insurance needs, benefits and others;
- establish receivership accounting and bank accounting;
- contact clients of the equipment leasing business to help them understand what is occurring in order to limit the impact of the receivership;
- identify and create a list of investors, creditors and other interested parties to be noticed in the case;
- actively reach out to investors to inform them of the receivership case and provide them information on how to contact the Receiver;
- create a website for investors to find information on contacting the Receiver, documents filed in the case and ultimately, the ability to file a claim in the case;
- if warranted, prepare a cost-efficient forensic accounting to identify assets, determine any recipients of ill-gotten gains and work with the SEC and the court to determine if there are other sources of potential recovery;
- examine the cost-benefit analysis of litigating claims against attorneys, accountants, officers, directors, insurance policies or others who may have contributed to investor losses;

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



- analyze and/or value receivership estate assets in anticipation of disposition for the benefit of investors;
- work with the SEC to develop a claims process and distribution plan that are both equitable and efficient, and focused on preventing disparate treatment of similarly situated investors;
- prepare periodic status and accounting reports pursuant to the Order of Appointment;
- administer the filing of all tax returns and investor tax documents, as necessary; and
- wind down the affairs of the receivership estate and file a final report with the court.

Please note that this list only represents the general steps and is not necessary inclusive of all work to be completed or in the order of anticipated completion. Furthermore, this list may be subject to modification, including the addition or subtraction of steps based on the individual needs of the case and the Order of Appointment.

**Fiduciary Experience**

While I have not previously served as a receiver, I spent nearly eight years working for as the lead receivership administrator for Michael Grassmueck, an experienced receiver who was appointed in over a dozen federal equity receivership cases.  I served in significant roles in each case, including serving as interim CEO and CFO, and ultimately managing the day-to-day operations of each of these cases. Examples of cases in which I provided key receivership services include:

- *SEC v. Global Online Direct, Inc. et al.*, United States District Court for the Northern District of Georgia at Atlanta. The SEC sought a monitor to review the business activities of two farmers purporting to be operating a successful distressed merchandise resale business. Once onsite, it was quickly determined that no beneficial activities were occurring and the business was actually operating as a Ponzi scheme, having solicited nearly $45 million dollars in unregistered investments from over 10,000 domestic and international investors. The case was converted to a receivership and the assets were liquidated for the benefit of investors.

- *SEC v. Sunwest Management, Inc. et al.*, United States District Court for the District of Oregon at Eugene. The SEC sought a receivership and turnaround professional after they alleged that a large operator of retirement care facilities in 34 states was operating as a Ponzi-like scheme. In all, the company was accused of defrauding over 12,000 investors and creditors for $1.1 billion in claims. Ultimately, the company was placed into bankruptcy to shed unprofitable investments and then restructured and sold, leading many of the investors to receive more than 100 percent of their original investment.

- *FTC v. Merchant Processing, Inc. et al.*, United States District Court for the District of Oregon at Portland. A credit card processing company was accused of unlawful trade practices by offering misleading and altered contracts related to processing fees and equipment leasing. We took possession of the business, replaced all fraudulent contracts, wound down a dog racing operation, filed delinquent tax returns and ultimately sold the business, allowing us to make all victims whole and writing a multi-million dollar check to the U.S. Treasury.

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



These are just a few examples of the many cases that I have successfully completed. A more detailed list of federal monitor/receivership cases I have worked on can be found in the Fiduciary Services overview attached to this proposal.

**Billing Details**

Due to our broad range of experience and expertise, Bates Group is able to perform almost all required work in-house, saving both time and money, including tasks involving corporate accounting, forensic accounting, case administration, claims administration, asset valuation, investor communication and internet technology. Bates' billing philosophy is to leverage work down to the staff member with the lowest bill rate that also has the skills and experience necessary to complete the task. This allows us to minimize the cost to complete all work associated with the case, ensuring a maximum return to stakeholders involved in the matter while also preserving the quality of our work product.

Below is our 2018 Government Rate Sheet, which includes a 10 percent discount for government matters, and will not increase for the pendency of the case.

| 2018 Government Rate Sheet | |
|---|---|
| **Role** | **Discounted Rate** |
| Receiver | $315 |
| Managing Director/SME | $279-$315 |
| Director | $279 |
| Consultant | $225-$270 |
| Associate | $153-$198 |
| Analyst | $121-$153 |
| IT | $121-$153 |
| Administrative | $81 |
| Forensic Accounting | $198-$297 |
| Corporate Accounting | $126 |

All billing standards meet or exceed the Securities and Exchange Commission's *Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (SFAR)* and the U.S. Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses*.

Bates will not seek reimbursement for routine copying, facsimile, postage or other expenses. Any expenses which we will seek to have reimbursed will be done so in accordance with the SEC and U.S. Trustee guidelines above. Costs directly attributable to the administration of the estate will be paid directly by the estate in accordance with the Order of Appointment.

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



**Conclusion**

Thank you for the opportunity to provide this proposal for receivership services in the Essex capital Corporation matter. If you have any questions, or need any additional information, please feel free to reach out to me. My direct line is (971)250-4323, my cell phone is (503)708-0028 and my email is gwinkler@batesgroup.com.

Sincerely,

Geoff Winkler, JD, MBA, CFE
Director of Fraud & Forensic Investigations

Encl.:  CVs of Potential Team Members
        Bates Group Fiduciary Services Overview and Experience

**Bates Group LLC**

Portland   San Francisco   Dallas   St. Louis   Charlotte   New York   Boston   Washington, D.C.



## Geoffrey B. Winkler, JD, MBA, CFE

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Main:    (503) 670-7772
Fax:      (503) 670-0997
Email:   gwinkler@batesgroup.com

### BIOGRAPHY

Geoff Winkler is the Director of Bates Group's Fraud and Forensics practice, where he draws on his extensive legal and financial industry experience across a diverse range of businesses to provide strategic and focused consulting as well as investigative and asset recovery analyses related to securities litigation and other sensitive business issues.

Before coming to Bates Group, Geoff was a business consultant and turnaround professional.  He has extensive experience working with a wide array of businesses suffering financial, organizational or management issues. Geoff often functioned as interim CFO, COO or general manager while working to either restore the company to financial and organizational health or determine and execute the best plan to close or sell the business. He has experience working closely with the Securities and Exchange Commission, Federal Trade Commission, state and federal agencies, and local businesses and professionals.

In addition to more than two decades of practical financial, legal, managerial and turnaround experience, Geoff also holds a Bachelor's Degree in Politics, a Master's Degree in Business Administration, and a Juris Doctorate from Willamette University. He is also recognized as a Certified Fraud Examiner by the Association of Certified Fraud Examiners and a Certified Insolvency and Restructuring Advisor by the Association of Insolvency and Restructuring Advisors.  In 2011, Geoff and his team were awarded the Turnaround Management Association's "Turnaround of the Year" award for their work in the Securities and Exchange Commission v. Sunwest Management, Inc et al. case.

Geoff has testified in several state and federal court matters and has been a guest speaker for a number of professional organizations, providing strategic advice and training to their members. He also is an adjunct professor of business law, business ethics and American government at Chemeketa Community College.

### EXPERIENCE

Bates Group LLC, *Director, Fraud and Forensics* 2016-Present
Bates Group LLC, *Consultant*, 2015 - 2016
Grassmueck Group, *Director of Case Management*, 2007 - 2014
Chemeketa Comm. College, *Adjunct Professor of Political Science & Business Law*, 2009 - Present
Lafky & Lafky, *Certified Law Clerk*, 2005 - 2006
Law Offices of Gale Rieder, *Law Clerk,* 2004 - 2005

### PROFESSIONAL CERTIFICATIONS

Certified Fraud Examiner (Association of Certified Fraud Examiners), Certified Insolvency Restructuring Advisor (Association of Insolvency and Restructuring Advisors), and Certified Specialist in Asset Recovery (Association of Certified Financial Crime Specialists).



**PROFESSIONAL ORGANIZATIONS**

Association of Insolvency Restructuring Advisors, Association of Certified Fraud Examiners, Turnaround Management Association, National Association of Bankruptcy Trustees, and National Association of Federal Equity Receivers.

**EDUCATION**

Willamette University Atkinson School of Graduate Management, Salem, Oregon.
  Masters in Business Administration, August 2008

Willamette University School of Law, Salem, Oregon.
  Juris Doctorate, May 2006

Willamette University College of Liberal Arts, Salem, Oregon.
  Bachelor of Arts, Politics, May 2003



## Steve Daughters, CPA, MBA
## San Francisco, CA

Main:     503.670.7772
Fax:       503.670.0997

### BIOGRAPHY

Steve Daughters specializes in leading fraud and forensic accounting engagements and testifying in litigation matters. His primary areas of concentration are corporate whistleblower investigations, complex commercial damages, royalty disputes, lost earnings and business interruption claims. Mr. Daughters has testified as an expert witness in state and federal court matters.

With more than 25 years of experience assisting counsel, Mr. Daughters has worked with many of the top global law firms and the boards of Fortune 500 companies. Notable assignments include assisting boards with corporate investigations related to retroactive pricing of stock options, earnings management, revenue recognition and tax issues. His industry experience includes financial services, health care, high tech, real estate, energy and others.

Mr. Daughters assisted three firms in developing the Bay Area litigation and forensic accounting practices. He was instrumental in winning several large investigations and contributing significantly to the early rapid growth of each firm practice. Mr. Daughters has Big 4 experience, serving as a Senior Manager with Ernst & Young.

### PROFESSIONAL EXPERIENCE

#### Recent Forensic Accounting and Fraud Investigation Experience

- Directed a forensic accounting investigation, which included an expert declaration, on behalf of shareholders. Determined multiple red flags, including below average operating margins, numerous undisclosed related party transactions and equity distributions with no earnings analysis.

- Led a forensic accounting investigation on behalf of a large multi-national company after it was defrauded through bogus real estate transactions. Traced escrow funds through banking transactions to recover assets for client.

- Managed a forensic accounting investigation of a hotel management company. Discovered $500,000 of incorrect payments. Obtained a $500,000 reimbursement for our client.

- Performed a forensic accounting investigation for a Trustee to analyze the books and records of a bankrupt asbestos company. Our findings included the CEO misappropriating $100 million in executive loans.

- Managed multiple forensic accounting investigations to examine whistleblower fraud allegations.

- Conducted multiple corporate investigations and forensic accountings to analyze stock option back dating. Mr. Daughters was a leader in developing industry practices in performing these corporate investigations.

- Executed an investigation for an insurance company related to a $1 million payroll fraud in India.



**Recent Litigation and Dispute Advisory Experience**

- Analyzed information related to post-financial crisis litigation project related to a commercial paper investment loss. Assisted counsel with the evaluation of investment suitability, portfolio performance, portfolio earnings and potential damages theories.

- Testifying in bankruptcy court for post-bankruptcy litigation matter over a leveraged leasing transaction. Dispute entails extensive financial transaction analysis and legal agreement review and documentation.

- Provided expert opinion on financial crisis litigation surrounding collateralized debt obligations (CDOs) and waterfall disbursements. Evaluated tranche payouts and liquidations for institutions and hedge funds.

- Performed dozens of analyses of business interruption and property damage claims following a major California earthquake.

- Testifying expert in copyright infringement matter related to the importing of counterfeit goods from China. Submitted expert report to evaluate alter ego issues and quantify unjust enrichment due to copyright infringement.

- Supported effort for a large scale forensic review of potential health care fraud for a government agency. Targets were behavioral health service organizations that were receiving Medicaid and Medicare reimbursements.

- Testifying expert in State Court matter regarding a construction dispute. Damage analysis includes investigative auditing of original contract and budgets, actual billings, change orders and all supporting documentation.

- Provided plaintiff's counsel with an expert report and damages analysis based upon trade secret misappropriation in a Federal Court matter.

**EDUCATION**

- Bachelor of Arts, Economics and Accounting, Claremont McKenna College
- Master of Business Administration, University of Southern California Marshall School of Business

**PROFESSIONAL AFFILIATIONS & CREDENTIALS**

- Certified Public Accountant (CPA)
- American Institute of Certified Public Accountants
- California Society of Certified Public Accountants

# Summary of Leasing Experience – Steve Daughters, CPA, MBA

Steve Daughters is a CPA and Forensic Accountant worked at the Bank of America Leasing and Capital Group (BALCG) within the Global Corporate Investment Bank (GCIB) of Bank of America.  I started at BALCG following graduation from business school.  The various functions of BALCG consisted of working on all parts of the leasing deal:  origination, credit analysis, pricing, and syndication (equity and debt).  My role was that of an equity syndicator, where we raised money (brought in investors) for the equity piece of the lease deals.  Being a CPA, I was also intimately familiar with the complex modeling that was being done to determine the Net Present Value (NPV) of the deals.  There are a myriad of factors that are involved in determining the NPV of a lease deal.  These factors include the FMV of the asset, the depreciable life, the depreciation method being used (for accounting and tax purposes), interest rates, tax rates, residual values of equipment, fees, etc.  Some of the benefits of a lease are derived from the timing difference of the cash flows.  For example, depreciation for tax purposes is often far quicker than depreciation for book purposes, especially for an asset that has a long useful economic life (5 years for tax versus 20+ years for book).  This timing difference often creates a NPV.  Leases, however, are not supposed to be done for solely tax benefits.  If leases are entered into solely for tax purposes, with little or no economic benefit, the transactions may be disallowed by the IRS and result in an unwinding of the transaction.

Examples of leasing transactions that I was aware of and involved with include:

-   Leverage leases (on OR off balance sheet)
-   QTE's (Qualifing Technological Equipment)
-   LILO's (Lease-In, Lease-Out's)
-   Lease to Service Contracts (son of LILO's)
-   International structures

Each of the above structures was highly dependent upon the type of equipment being leased, in addition to other factors.

General parameters of a leveraged lease are 85% debt and 15% equity, resulting in 100% financing.  These lessor benefits are provided in exchange for the immediate monetization of the lessee asset.  In the case of a sale leaseback, the lessee monetizes an asset, but maintains the use of the asset.  In exchange for this up-front cash, the lessor obtains the depreciation and interest deductions from the transaction.  This often results in an income profile where much of the income recognized over the course of the leveraged lease is in the 1st 3-4 years of the lease term.  Much of the remainder occurs at the back-end of the lease based upon the residual value of the asset.  The various structures have different income profiles and vary by the myriad of factors going into the NPV lease calculation.

In 2011, I served an expert in a post-bankruptcy dispute involving the lease of ~$350 million of semiconductor manufacturing equipment. I evaluated the numerous facets of the lease, including the Termination Value (TV) calculations. I assisted my client in saving over $100 million in TV payments.



## Alex J. Russell, CFA

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Main:    503.670.7772
Fax:     503.670.0997
Direct:  971.250.4353
Email:   arussell@lbatesgroup.com

**BIOGRAPHY**

Alex Russell is the Director of Institutional and Complex Litigation for Bates Group LLC, where he is responsible for managing cases related to institutional disputes involving trust or banking entities, or cases related to investment banking or sales & trading, as well as those involving ultra-high net worth individuals. In addition, Mr. Russell is responsible for managing class action matters, as well as matters involving the assessment of economic damages.  Mr. Russell also serves as the co-leader of Bates Group's Big Data Analytics segment.  Mr. Russell also provides expert witness testimony related to valuation, economic damages, quantitative financial modeling, and derivative strategies and products within both the retail and institutional securities litigation practice areas.  He is an adjunct professor of finance at both Linfield College and in the Graduate School of Management at Willamette University.

Mr. Russell was previously the head of Bates Group's Research division, where he was responsible for managing, researching and writing reports that provide analytic coverage of the fixed income, equity, and structured product markets.

Before joining Bates Group, Mr. Russell was a Consultant with LECG where he used his experience in accounting, finance, and the securities industry to provide support in forensic investigatory engagements mainly related to financial litigation cases.

Prior to LECG, Mr. Russell was an auditor with the Oregon Department of Revenue, where he reviewed the filings of both individual and corporate filers. He has previously worked as a research analyst for Merrill Lynch and as an analytic consultant to Willamette University's endowment.

**SELECT LITIGATION ENGAGEMENTS**

o   Retained by counsel to provide mathematical modeling support and analysis of other experts' Markov process model, including responding to the expert report in a damages case against a public company (healthcare).  Quality of life and dollar cost impact of utilizing one type of heart valve over another were modeled in detail.

o   Retained by counsel to address the suitability of various venture capital investments.  Worked in association with testifying expert to compile financial analysis and comparable company analysis in order to determine whether or not suitability requirements were met.  Created testimony exhibits and other various analyses.

o   Retained by counsel to assist in the representation of a large mutual fund company in numerous (100+) FINRA arbitrations relating to its short term bond fund. Prepared damages models, and conducted various fixed income specific analysis relating to credit spreads, housing prices, duration and investment concentration requirements.  Conducted in depth research into numerous complex securities such as CDOs, ABS and CMOs.  Responded to other expert



reports and analysis, as well as preparing and refining testimony exhibits.  Modeled NAV for the fund based on different hypothetical concentration requirements.

- Retained by a Swiss Bank to investigate its prime brokerage relationship with a large hedge fund.  Specifically at issue was the options writing strategy utilized by the hedge fund, and the pattern of margin calls that this strategy had generated.  A detailed review and recreation of the trading strategy was conducted, and a final report submitted.

- Retained by counsel to provide analysis and evaluation concerning option strategies for use within a portfolio.  Evaluated structured products proposed to the group by bulge bracket Investment Banks.  Modeling of all products, historical analysis, and simulation techniques used to estimate impact on the portfolio of including these derivative securities.

- Retained on behalf of a national broker-dealer in FINRA arbitration in San Francisco.  A software error was alleged to have inflated the likelihood that claimants could retire at the age they wished, with their desired level of spending and an acceptable risk of running out of capital in retirement.  Evaluated the ability of claimants to retire on time, subject to the above conditions, using various simulation techniques, including Monte Carlo, Stochastic Present Value and Exponential Reciprocal Gamma solutions.  Damages mitigating calculations were also offered via testimony.  Assisted counsel in analyzing other expert material, and provided questions for cross examination.

- Retained on behalf of a multinational financial services corporation in FINRA arbitration in Dallas, regarding damages caused by a temporary error in the online trading platform provided to a day trading entity.  Cost basis, wash sales, and trade matching considerations were covered, in addition to damages models.  Responded to damage theories put forward by the opposing expert in settlement negotiations.

- Retained on behalf of a medical group, hospital, and emergency room physicians in Nevada State Court, regarding economic damages, including but not limited to future lost wages and loss of support damages, resulting from medical malpractice.

- Retained on behalf of a national corporation in Washington State Court, in a securities class action lawsuit subsequent to a restatement of financials.  Simultaneous inquiry from the SEC, and a derivative shareholder action (Pennsylvania) were also filed.  Testimony areas include the calculation of 10b-5 damages under various theories of share price inflation, event study analysis to identify significant movements in stock price, and statistical analysis of short selling activity as a driver of stock returns.

- Retained on behalf of a global asset management firm in Arizona State Court to provide a forensic accounting of the activity that occurred within a Trust account wherein potential fraud had occurred with respect to a Trust beneficiary of diminished mental capacity.  Provided a full accounting of the activity, as well as a rebuttal of plaintiff's expert's theory of damages.  A written report was provided.

- Retained on behalf of an individual in Washington State Court to provide an analysis of the economic damages suffered as a result of alleged improper termination.  After an extensive review of his personal documentation, an analysis of the economic damages was created, covering the loss in income, benefits, and retirement account contributions and asset growth within those accounts.  Modeling was conducted and damages were estimated under multiple different scenarios, including different retirement ages.  A written report was provided.



o   Retained on behalf of a leading global provider of insurance, annuities and employee benefit programs in FINRA arbitration to opine on a reallocation from one set of funds, to a different sub-allocation of funds within a variable annuity in a particular client's account. Modeled the economic impact of the reallocation on both the death benefit and total guaranteed withdrawal amount riders associated with the annuity, as well as on the account value over all as a result of the change.   Hypothetical scenarios assuming the allocation had not been changed were also presented.

o   Retained on behalf of a global asset manager in relation to a regulatory enforcement action initiated by the Department of Labor.   The allegations concerned trade crossing within protected accounts, and counsel requested an analysis of the DOL's theory of damages.   Pricing and subsequent performance of fixed income and equity securities was examined, as well as establishing correct benchmarks based on client account objectives.   Multiple scenarios were generated addressing the DOL's critiques, and an alternative theory of damages was put forth that rebutted the DOL's critiques related to mispricing, subsequent performance on trades, and trade execution.

**SELECT FORENSIC ACCOUNTING INVESTIGATIONS**

o   Retained by special counsel of the special committee of the board of directors of a public company (semiconductor) to perform a forensic investigation of the company's historical stock option granting practices to determine if backdating of stock options had occurred and to opine on the correct accounting treatment of stock option grants with regard to the company's restatement.

o   Retained by special counsel of the nominating and governance committee of the board of directors of a public company (wireless devices) to perform a forensic accounting investigation of the company's historical stock option granting practices to determine if backdating its stock options had occurred and to opine on the correct accounting treatment of option grants with regard to the company's restatement. Retained by the company to evaluate the financial results related to its stock option restatement in accordance with GAAP.

o   Retained by counsel to investigate the activities of a large conglomerate company in relation to its Australian uranium export activity.   Analysis included detailed reconciliation of thousands of shipping documents, end user agreements, and transfer pricing analysis.   IASB and Australian regulatory issues were also examined.

o   Retained by counsel to examine the financial relationship between a major US investment Bank and a large Italian dairy conglomerate.   Analysis focused on the treatment of numerous complex derivative agreements entered into over the course of a decade.   Advised on proper accounting treatment of agreements under both GAAP and IASB standards.

o   In a well-publicized bankruptcy involving a broker-dealer, managed millions of data points across competing databases. Managed our IT team and in-house programmers to efficiently search each database and succeeded in tracing the movement of the firm's assets under management (customer funds) in the weeks prior to bankruptcy. In turn, this made it possible to identify and illustrate when assets had been used inappropriately.   Summary analysis was prepared using Python.

o   Retained on behalf of the regulatory division of a major broker/dealer to respond to an SEC inquiry that focused on investment allocation in a group of mutual funds. Spanning 30 funds that



were traded across 1,200 accounts, traced the activity on the 1,000+ purchases that were at issue. Allocating the trading and account transfer activity between those purchases/sales which were at issue (as opposed to those which were not) proved to be the paramount task. With the assistance of our in-house programming team and the use of our proprietary programs, successfully navigated through the hundreds of thousands of lines of transactions to ultimately arrive at a clear and concise summary that the client relied upon to respond to the SEC.

o   Worked directly with a financial services firm's inside counsel to prepare an economic benefit analysis showing the impact of a large number of variable annuity switches. The analysis used internal reports as well as Morningstar to evaluate the switches at policy, benefit and fund levels. Analyses included review of surrender charges and premium enhancements to evaluate the potential damages associated with alleged variable annuity sales practice violations. In addition, assisted counsel during this investigation by reviewing the damage calculations provided by the state and providing clarification regarding the calculation methodology.

o   On behalf of the regulatory division of an international broker/dealer analyzed over 300 multicurrency accounts with the ultimate goal of tracing the flow of assets to establish relationships in a potential money laundering scheme. Utilized many proprietary programs and created custom program solutions (including relationship mapping) that highlighted those transactions connecting accounts/individuals. This resulted in the client having to close many accounts and pursue additional legal action.

**SELECT CONSULTING ENGAGEMENTS**

o   Retained by a Fortune 500 company to perform statistical analysis to support cash reserve estimates and project completion likelihood in relation to a major construction project in Las Vegas.

o   Retained by a local bank company to perform a risk assessment of their lending process, including a statistically valid examination of their likely loan losses, and the overall quality and characteristics of their existing loan portfolio.  Prepared and submitted an advisory report.

o   Retained by state government to analyze the revenue implications of adopting various hotel and tourism tax policies.  Involved detailed forensic analysis of previous revenue generated under various tax initiatives.  Created and ran numerous simulations of proposed tax system using SAS, in order to prepare an authoritative report recommending a single course of action.

o   Performed risk assessment on a number of proprietary strategy funds acquired by a particular financial institution prior to their being available for the institution's general FA team to put clients in.  This was done to determine whether the Funds' performance appeared inconsistent with its stated investment strategy or other benchmarks such that there was a basis for further scrutiny. The assessment analyzed strategy-adjusted returns across a number of dimensions to assess on an ex-ante basis if there was a heightened risk of fraud/NAV manipulation, based on aberrant performance indicators.  Dimensions included: 1. A discontinuity in the distribution of returns, 2. Unconditional serial correlation in returns, 3. Conditional serial correlation in returns, 4. The pattern of return and volatility, 5. Data quality, 6. Frequency of positive returns v. frequency of negative returns, 7. Kurtosis and skewness, and 8. Measures of low correlation between fund returns and the returns of similar assets.

o   Created a mock MIDAS (Market Information Data Analytics System) for a major financial institution in order to prepare that institution for possible findings if they were targeted for review



by the SEC.  Mean frequency analysis was applied to every order within the selected traders' books against the NBBO.  The curve formed by the shape of deviations from the mean over time was used to examine a number of potential Rule 10b-5 violations, depending on the shape of the deviation space.  These could include market timing, spoofing, inter-positioning, trading ahead, and insider trading.

**EXPERIENCE**

**Lindfield College**, *Adjunct Professor – Finance*
**Willamette University Atkinson Graduate School of Management**, *Adjunct Professor – Finance*
**Bates Group LLC,** *Head of Research* (2013 to 2016)
**Bates Group LLC**, *Senior Manager Capital Markets* (2011 to 2013)
**LECG**, *Consultant* (2008 to 2011)
**LECG,** *Senior Associate* (2006 to 2008)
**Willamette University Endowment**, *Consultant* (2004 to present)
**Oregon Department of Revenue**, *Audit* (2004 to 2006)
**Merrill Lynch,** *Research Analyst* (2005)

**EDUCATION & PROFESSIONAL QUALIFICATIONS**

Chartered Financial Analyst, 2012
Certified Fraud Examiner, 2008
MBA, Willamette University, Finance, 2006
BA, American University, Mathematical Logic, 2003
Association of Certified Fraud Examiners
CFA Institute
CFA Society of Portland



## Andrew C. Daniel, CA, CVA, CFE, CAS
## Director

Main:   503.670.7772
Fax:     503.670.9997
Direct:  503.724.8995
Email: adaniel@batesgroup.com

**BIOGRAPHY**

Andrew Daniel is a Director of Bates Group LLC and uses his experience in accounting, finance, and the securities industry to manage forensic investigations and dispute consulting engagements related to investment and financial litigation, as well as providing valuations in business interruption cases.

His experience in investment litigation includes preparing financial and damages analysis, and consulting on: trading patterns, financial market trend research and event analysis, investment product and market risk analysis, concentration, actively vs. passively managed investment strategies, investment cost analysis and case assessment related to securities litigation and other financial matters. Mr. Daniel has led engagements involving a wide variety of investment products including: structured products, financial and agency preferred securities, annuities, mutual funds, options, equities and exchange traded funds. He has testified as an expert in financial litigation cases on more than 50 occasions.

Mr. Daniel also has experience leading multi-million dollar property, business interruption, and lost profit engagements. Engagements have involved financial assurance disputes and lost profits associated with contractual disputes. He has been retained to testify in these areas on several occasions.

Mr. Daniel's experience in financial litigation includes: alter ego litigation, assessing claims in the construction industry, analysis of pension plan investment options and relative costs, and reviewing back dated stock option processes, application of accounting standards and calculating associated financial statement adjustments. He has been a work product and consulting expert in these areas.

Before joining Bates Group, Mr. Daniel was a Principal with LECG and senior manager with Bates Private Capital Incorporated, a firm providing litigation consulting, financial analysis, market trend research, and expert witness testimony for securities and other financial-related matters.

Mr. Daniel began his financial career as a senior accountant with Coopers & Lybrand in Melbourne, Australia where he performed financial audits and related tax work for insurance, investments, retirement benefits and manufacturing companies, state based tertiary institutions, and local government organizations. He has also worked as an audit supervisor and management accountant with several companies in Australia utilizing his finance, accounting, and management skills in the operational aspects of national initiatives and strategic business ventures, the development of reporting models, and change management projects.



**SELECT FORENSIC ACCOUNTING INVESTIGATIONS**

- o   Retained by special counsel of the special committee of the board of directors of a public company (semiconductor) to perform a forensic investigation of the company's historical stock option granting practices to determine if backdating of stock options had occurred and to opine on the correct accounting treatment of stock option grants with regard to the company's restatement.

- o   Retained by special counsel of the nominating and governance committee of the board of directors of a public company (wireless devices) to perform a forensic accounting investigation of the company's historical stock option granting practices to determine if backdating its stock options had occurred and to opine on the correct accounting treatment of option grants with regard to the company's restatement. Retained by the company to evaluate the financial results related to its stock option restatement in accordance with GAAP.

- o   Retained by special counsel of the special committee of the board of directors of a public company (broadband devices) to perform a forensic investigation of the company's historical stock option granting practices to determine if backdating of stock options had occurred and to opine on the correct accounting treatment of stock option grants with regard to the company's restatement.

- o   Retained by counsel to provide advice and prepare various analyses related to a potential derivative lawsuit against an officer of a public company (technology Infrastructure) related to historical stock option accounting practices.

- o   Retained by a Fortune 500 company (software) to analyze contract management, purchase order, and creditors systems to identify duplicate or incorrect payments for follow up and collection by the client.

- o   Retained by Fortune 500 company (insurance) to provide research on GAAP and accounting guidance related to the transfer of risk under reinsurance contracts.

**BUSINESS INTERRUPTION VALUATION ENGAGEMENTS**

- o   Retained by counsel of a privately held company to perform a review and assessment of the company's compliance with local government financial assurance requirements. The review resulted in the preparation of a series of expert reports and affidavits in defense of allegations that the company had failed to meet the required financial assurance.

- o   Retained by counsel of a privately held company to perform an analysis of the lost profits associated with local government's decision to prematurely withdrawal approval for the continued operation of the company's business.



**SELECT LITIGATION ENGAGEMENTS**

- o   Retained by counsel as a work product consultant to provide analysis and advice regarding a contractual dispute which included an analysis of inventory and shipment records, unit costs, foreign exchange fluctuations, required disclosures under Australian accounting standards (AAS) and a comparison of internal documents to external communications made to customers.

- o   Retained by counsel representing a multi-national broker-dealer firm to testify on asset and sector allocations, relative risk of alternative hypothetical investments, hypothetical profit and loss analyses critiquing plaintiff's expert's damages calculations.

- o   Retained by counsel as a work product consultant to provide analysis and advice regarding various accounting issues with regard to stock option accounting in a criminal case involving alleged backdating of stock options by the CEO of a public company.

- o   Retained by counsel representing a multi-national insurance provider to testify on the profit and loss associated with investment decisions made by a retail investor with respect to retirement based investment products and other alternative investments.

- o   Retained by counsel to provide advice and prepare various statistical analyses related to a derivative lawsuits against various directors and officers of a public company (semi-conductor) related to its historical stock option accounting practices.

- o   Retained by counsel representing a multi-national broker-dealer firm to testify on claimant's trading activity in specific stocks and corporate debentures securities in light of research reports issued by Wall Street firms and other reporting agencies.

- o   Retained by counsel to provide advice and prepare various market-timing and late-trading analyses in a criminal case involving alleged market timing and late trading of various institutional investors.

- o   Retained by counsel representing a Fortune 500 company (retail) to analyze ERISA related allegations addressing excessive management fees and expenses associated with the management of the plan and the retail mutual funds offered; the retention of imprudent investment options; failure to implement and have adequate procedure for evaluation, selecting and monitoring fund options.

- o   Retained by counsel representing a Fortune 500 company (consumer staples) to analyze ERISA related allegations addressing: breach of fiduciary duty, maintaining and holding excessive cash in company stock funds, charging excessive fees and expenses, inherent costs associated with a unitized stock fund.

- o   Retained by special counsel of an insurance company to perform a detailed review of over 100,000 documents relating to a construction company's performance on multiple projects. The review resulted in the reconstruction of events leading up to the claim and graphical presentations of data to assist in determining if a payout by the insurance company was valid.



**EXPERIENCE**

Bates Group LLC, Director, 2013 to Present
Bates Group LLC, Principal, 2011 to 2013
LECG, Principal, 2005 to 2011
Bates Private Capital Incorporated, Lake Oswego, Oregon, Senior Manager, 2002–2005
Nike Inc., Beaverton, Oregon, Senior Financial Analyst, Contract Position, 2002
Jossco USA Inc., Portland, Oregon, Financial Controller, 1999–2001
Bankers Trust Australia, Sydney, Australia, Management Accountant, 1998–1999
Broken Hill Proprietary Company, Wollongong, Australia, Management Accountant, 1996–1998
Grant Thornton LLP, Melbourne, Australia and Vancouver, Canada, Audit Supervisor, 1994–1996
Coopers & Lybrand, Melbourne, Australia, Senior Accountant, 1990–1993


**EDUCATION & PROFESSIONAL QUALIFICATIONS**

Certified Annuity Specialist, Institute of Business & Finance, 2012
Certified Valuation Analyst (CVA), National Association of Certified Valuation Analysts, 2009
Certified Fraud Examiner (CFE), Association of Certified Fraud Examiners, 2008
Associate of the Institute of Chartered Accountants (ACA), Australia, 1992
Masters in Business and Technology, University of New South Wales, Sydney, Australia, 2000
Bachelor of Economics, Monash University, Melbourne, Australia, 1989



**Benjamin R. Pappas**
**Chief Operating Officer**
**Lake Oswego, OR**

Direct:   503.869.3306
Main:    971.250.4329
Fax:     503.670.0997
Email:   bpappas@batesgroup.com

**BIOGRAPHY**

Benjamin Pappas is the Chief Operating Officer of Bates Group in Lake Oswego, Oregon, where he uses his strategic planning and finance background to set financial policy and direction while also being an active participant in, and driver of, the company's overall strategy. Prior to joining Bates Group, Mr. Pappas was Senior Vice President and Chief Operating Officer of D.A. Davidson Companies' Equity Capital Markets business, where he was responsible for the implementation of strategic growth initiatives and the development of an annual financial budgeting and forecasting process. Mr. Pappas has also previously worked as an equity research analyst and strategic planning analyst focused on the technology industry, after beginning his career as a financial advisor at Merrill Lynch. Additionally, he is a graduate of the Securities Industry Institute at the University of Pennsylvania's Wharton School of Business. Mr. Pappas enjoys traveling and is an avid sports fan and athlete.

**EXPERIENCE**

**D.A. Davidson & Co.** – SVP & Chief Operating Officer, Equity Capital Markets (ECM); 2010 – 2016

**D.A. Davidson & Co.** – Board of Directors, Advisory Member; 2013 – 2016

**D.A. Davidson & Co.** – Institutional Equity Research, Technology Team; 2007 – 2010

**Lattice Semiconductor** – Strategic Planning Analyst; 2005 – 2007

**Merrill Lynch** – Financial Advisor; 2004 – 2005

**EDUCATION**

University of Oregon, Lundquist College of Business
Executive MBA; 2014-2016 (expected)

University of Pennsylvania, Wharton School of Business
Securities Industry Institute; 2013-2015

Linfield College
Bachelor of Science (BS) with Triple Major: Economics, Mathematics, Chemistry; 2000-2004

**PROFESSIONAL QUALIFICATIONS**

Audit Committee – Unitus Community Credit Union



## David S. Zweighaft, CPA/CFF, CFE

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Main:   503.670.7772
Fax:     503.670.0997
Email:  dzweighaft@dszforensic.com

**BIOGRAPHY**

David S. Zweighaft is a Fraud Subject Matter Expert with over twenty years of experience serving the legal and financial services communities with both consulting and expert witness services. Mr. Zweighaft has diverse industry experience in Accounting, Auditing, Finance and Project Management. He has extensive expertise in Accounting Policies and Procedures and Financial Reporting with an emphasis on investigating financial statement misrepresentations, assessing the effectiveness of internal controls and their impact on operational efficiencies.

Mr. Zweighaft is responsible for providing law firm clients with litigation consulting services including conducting investigations, performing analyses and calculating economic damages, providing expert witness testimony and performing due diligence reviews. In addition, he has managed large litigation consulting engagements, assessing controls and evaluating documents produced during the discovery process. Prior to starting his own practice, Mr. Zweighaft spent four years at a risk management advisory firm as Associate Director of their Fraud Risk Management practice and over thirteen years with global public accounting firms focusing on litigation and forensic services. Mr. Zweighaft is based in New York.

**EXPERIENCE**

Bates Group LLC, Expert Witness, July 2013 to Present
DSZ Forensic Accounting & Consulting Services, LLC, New York, NY, Principal, January 2008 – Present
RGL Forensics, New York, NY, Director, January 2009 – December 2009
Protiviti, Inc., New York, NY, Associate Director, Financial Investigations & Litigation Consulting Services, August 2004 – December 2007
Lazar Levine & Felix LLP, New York, NY, Principal - Litigation and Forensic Services, November 2000 – August 2004
Deloitte & Touche LLP, New York, NY, Manager, Forensic Accounting and Corporate Investigative Services Practice, December 1996 – November 2000
Coopers & Lybrand LLP, New York, NY, Senior Associate, Litigation Consulting and Dispute Resolution Services, August 1990 – December 1996

**EDUCATION**

Pace University - Master of Science in Accounting – September 1990
Georgia Institute of Technology – Bachelor of Science in Industrial Management – August 1984
Certificate in Industrial & Organizational Psychology



**PROFESSIONAL QUALIFICATIONS AND AFFILIATIONS**

American Institute of Certified Public Accountants
Certified in Financial Forensics
Member, Forensic and Valuation Services Section
Member, Anti-Fraud Task Force
New York State Society of Certified Public Accountants
Chair, NYSSCPA Litigation Services Committee 2005 – 2007
Co-Chair, Annual Anti-Fraud/Anti-Money Laundering Conference (various years 2002 – 2011)
Association of Certified Fraud Examiners
Faculty, Annual ACFE Global Fraud Conference 2012, 2013
Center for Strategic Business Integrity
Certified Board Advisor
Member, Board of Advisors
New York University School of Professional Studies, Adjunct Faculty



## Jennifer L. Stout

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Direct:  971.250.4302
Main:    503.670.7772
Fax:     503.670.0997
Email:   jstout@batesgroupllc.com

**BIOGRAPHY**

Jennifer Stout, President and CEO of Bates Group LLC, embodies the core "Bates Values" that:  all client needs are embraced as our own; all challenges can be addressed; and we can innovate and compete while treating others and our team with dignity and respect.  Born and raised in Oregon, Jennifer began her career as a CPA at Arthur Anderson (a Big Five accounting firm) before joining Bates, where over the last 20 years she has grown from an entry-level financial analyst into the leader of the Company.   She builds on her detailed understanding of all facets of Bates Group's strengths by working tirelessly to expand the boundaries of our "End-to-End" solutions and services benefiting clients throughout the life cycle of their legal, regulatory and compliance matters.

As the key driver of Bates' growth, Jennifer works to ensure that Bates' clients nationally and internationally are receiving exceptional support. Her commitment to building a world-class company is embraced by countless clients and the entire Bates team.  Jennifer encourages and drives Bates and its clients to stay one step ahead of the curve by identifying and resolving issues before they even present themselves and making sure that we have the staff, resources, and expertise to provide solutions.  Her caring approach to each client enables us to build long-term, substantial relationships with everyone we serve.

Jennifer is an avid reader and traveler, and she mostly enjoys spending time with her three children and pets, and laughing with friends and colleagues.

**EXPERIENCE**

**Bates Group LLC**, President/CEO, 2011 to present
**LECG**, Director, 2005 to 2011
**Bates Private Capital Incorporated**, Lake Oswego, Oregon, Managing Director, 2000–2005;
   Senior Associate, 1993–1999
**Arthur Andersen & Co.**, Portland, Oregon, Associate, Tax Department, 1990–1993

**EDUCATION & PROFESSIONAL QUALIFICATIONS**

Certified Public Accountant, 1993
BBA, Accounting, University of Portland, 1991
National Seminars at Arthur Andersen (2 years), specialized in tax, management, and audit training



## Julie R. Johnstone, CPA

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Direct:  (971) 250-4319
Main:    (503) 670-7772
Fax:      (503) 670-0997
Email:   JJohnstone@batesgroupllc.com

**BIOGRAPHY**

Julie Johnstone is a Principal of Bates Group LLC, where she uses her experience in accounting and finance to provide consulting and manage forensic investigatory engagements primarily related to financial litigation cases.

Before joining Bates Group, Ms. Johnstone was a senior manager/consultant with LECG and Bates Private Capital Incorporated, a firm that provided litigation consulting, financial analysis, market trend research, and expert witness testimony for securities and other financial-related matters.

Ms. Johnstone also provided contract accounting services through Johnstone Accounting Solutions, Inc. where she served as controller for various clients, as well as provided monthly bookkeeping and tax services to small businesses and individuals. Ms. Johnstone began her accounting career in the audit department at Ernst & Young, and then continued her career at Symonds, Evans & Company (formerly Symonds, Evans & Larson, P.C.), performing financial statement audits and reviews in a variety of industries.

**EXPERIENCE**

Bates Group LLC, Principal, 2011 to Present
Bates Group LLC, Senior Managing Consultant, 2011
LECG, Senior Managing Consultant, 2008-2011
LECG, Lake Oswego, Oregon, Senior Manager, 2005-2008
Bates Private Capital Incorporated, Lake Oswego, Oregon, Senior Manager, 2001-2005;
   Interim Controller, 2005
Johnstone Accounting Solutions, Inc., Portland, Oregon, Owner, 1997-2005
Symonds, Evans & Company, Portland, Oregon, Manager, 1992-1997
Ernst & Young, Portland, Oregon, Senior, 1989-1991

**EDUCATION**

Certified Public Accountant, 1991
BS, Business Administration/Finance, Portland State University, 1988



## Michael K. Smith
## Bozeman, MT

Main:   503.670.7772
Fax:    503.670.0997
Email:  msmith@batesgroup.com

**BIOGRAPHY**

Mike Smith is a Bates Group consultant and expert witness based in Bozeman, MT. Throughout his 40-year securities and banking career, he has interacted at the highest levels of management, as well as with clients of all types and account sizes. As a result of this experience, Mr. Smith possesses an in-depth understanding of supervisory requirements and sales practice regulations, as well as most investment products and services including; Equities, Fixed Income, Mutual Funds, Investment Management, Options, Futures, Structured Products, Restricted Stock Transactions and Lending. As a Managing Director and Regional Manager, he was responsible for all aspects of the securities and banking activities within the Midwest region for three major firms: Lehman Brothers, Barclays Wealth and Citi Private Bank.

Mr. Smith managed up to 110 registered representatives, including compliance and operational staff. He supervised an Office of Supervisory Jurisdiction (OSJ), and was consistently noted in audit findings for a "high level of compliance awareness with regulatory rules and firm policies." Mr. Smith possesses an extensive understanding of Sarbanes- Oxley and SEC/FINRA regulations.

At Citi Private Bank, Mr. Smith had direct management and supervisory responsibility for servicing 125 UHNW clients; collectively with $1B in deposits, $1B in managed investments and $2.5B in outstanding loans. Comptroller of the Currency (OCC) audits reported the business to be in excellent compliance with all policies and regulations.

During his tenure at Lehman Brothers, Mr. Smith directly supervised four business lines; retail brokerage and investment advisory, middle-market fixed income and equity sales, and corporate cash management. Revenues and AUM's exceeded $110M and $6.5B respectively. In addition, internal and external audit results improved dramatically as a result of his restructuring of the compliance and operations teams.

Mr. Smith has meaningful crisis management experience as a result of overseeing the cleanup (legal, regulatory, financial, personnel, etc.) of a 15-year ongoing Ponzi scheme that was discovered in the Cleveland, OH office of Cowen and Co. shortly after the acquisition of Cowen's retail operations by Lehman Brothers. In addition, Mr. Smith further honed his crisis management skills during the six months prior to and after Lehman Brothers bankruptcy filing in September 2008.

**PROFESSIONAL EXPERIENCE**

**Citigroup** – Chicago, IL (2010-2015)
Managing Director, Head of Midwest Region Citi Private Bank, North American Leadership Team

**Barclays** – Chicago, IL (2008-2010)
Managing Director, Head of Midwest Region

**Lehman Brothers** – Chicago, IL (1997-2008)



Managing Director, Midwest Regional Manager

**Morgan Stanley** – Chicago, IL (1982-1997)
Principal

**Kidder, Peabody & Co.** – Chicago, IL (1979-1982)
Registered Representative, Restricted Stock Specialist

**Merrill Lynch Pierce Fenner & Smith** – Chicago, IL (1977-1979)
Registered Representative

**Loewi & Co.** – Chicago, IL (1976-1977)
Registered Representative

**E.F. Hutton** – Chicago, IL (1975-1976)
Runner, Phone Clerk, Trade Checker, Floor Broker - Chicago Board Options Exchange

**EDUCATION**

BA, Economics, Rockford College – Rockford, IL (1971-1975)

**PROFESSIONAL LICENSES & CREDENTIALS**

Series 8, 23 // 3, 5, 7, 15 // 63, 65

NFA and FINRA Arbitrator



## Scott E. Lucas

5005 SW Meadows Road, Suite 300
Lake Oswego, OR 97035
Direct:  (971) 250-4344
Main:   (503) 670-7772
Fax:     (503) 670-0997
Email:   slucas@batesgroupllc.com

### BIOGRAPHY

Scott Lucas is Managing Director of Bates Group's Internal and Regulatory Investigations practice, where he uses his 20 years of experience in securities, accounting, and finance to help orchestrate forensic analyses related to financial disputes and investigations. He has extensive experience working with counsel and managing projects that involve such items as asset tracing, cost/fee analysis, forex trading, cross currency leveraging/hedging, insider trading, profit/(loss) calculations, concentration analysis and market trend research. Scott's engagements often cover a wide spectrum of issues and have lasted as little as one day to multiple years.

He is often called upon to assist in taking complex, quantitative issues and distilling the results into a clearly stated, succinct response, thereby allowing our clients to make timely, informed decisions.

Before joining the Bates Group, Mr. Lucas was a manager with LECG and Bates Private Capital Incorporated, a firm that provided litigation consulting, financial analysis, market trend research, and expert witness testimony for securities and other financial related matters. During his time at LECG / Bates, Mr. Lucas has overseen many large scale internal, regulatory and forensic investigatory engagements on behalf of some of the world's top brokerage firms involving such matters as money laundering, derivatives, financial analysis, trading patterns and alternative damages models.

### SELECT LITIGATION ENGAGEMENTS

o   Retained by counsel to assist in a matter against the NY State Attorney General's office regarding allegations of market manipulation and preferential treatment to insiders and "friends and family". For a specific time period, the entire trading of a firm was analyzed and traced to identify trends and unlawful trading.

o   Retained by counsel representing a major hedge fund being investigated by the SEC as to whether, through the use of consultants, the fund's trading violated insider trading regulations. The engagement required researching potential correlations between thousands of trades and such items as timing of meetings, relationships and employment history.

o   Retained by counsel as part of an internal investigation into whether a broker instituted the same option strategy on employee stock regardless of the clients' objectives. The inquiry required financial analyses on hundreds of employees' accounts from a large cap Wall Street firm.

o   Retained by counsel as part of a bankruptcy proceeding to trace cash funding and trading activity of a cash management fund which had assets under management of approximately



$1.5 billion.  Identified and extracted key source documents from a large database in order to perform the analysis

o   Retained in a criminal case that required the tracing of stolen cash/securities from a world renowned brokerage firm.

o   Retained by counsel to assist in identifying security transactions that were unlawfully liquidated in the secondary market thereby artificially inflating the true market value.
o   Retained by counsel to assist in recreating the internal financial entries of reverse repo trades that occurred at a major brokerage firm.

o   Retained in response to a class action lawsuit involving a top five international bank to provide financial analyses related to hundreds of clients who allegedly relied on the research advice of the institution.

**EXPERIENCE**

Bates Group LLC
*Managing Director, Internal and Regulatory Investigations, 2016-Present*
*Chief Knowledge Officer, 2011-2016*

LECG
*Principal, 2005 to 2011*

Bates Private Capital Incorporated, Lake Oswego, Oregon,
*Manager, 2003-2005;*
*Senior Analyst, 1996-2003*

R. Thomas McFadden, Jr., CPA, McMinnville, Oregon,
*Intern Tax Preparer, 1996*


**SECURITIES INDUSTRY EXPERTISE & LICENSES HELD**

Series 7–Full Registration/General Securities Representative (Inactive)

 **FIDUCIARY SERVICES**

Bates Group's professionals have considerable experience serving as a fiduciary in a number of different roles, including:

- **Federal Equity Receiverships** – A federal equity receiver is an independent third party appointed by a federal district court at the request of a regulatory agency to prevent irreparable harm by the defendant. Once appointed, the receiver takes on numerous responsibilities, which include protecting and preserving assets, locating additional assets through asset tracing, third party litigation, clawing back ill-gotten gains, marketing and liquidating estate assets, establishing claims procedures, and developing a distribution plan to provide restitution to victims.

- **Corporate Monitors** – Settlements between companies and regulators frequently require the appointment of a corporate monitor to ensure compliance with the terms of the settlement. The appointment of a corporate monitor provides a company with the necessary time to implement corrective actions pursuant to a settlement with the regulator in place of more severe punishment or fines.

- **Turnaround and Restructuring** – In order to provide assurance to customers and creditors, a turnaround and restructuring professional is brought into a company to help identify key business risks and opportunities, review and stabilize financial operations, provide liquidity projections and to negotiate with lenders to restructure debt.

- **Trustee in Bankruptcy** – A trustee is an independent third party appointed to administer a bankrupt entity for the benefit of creditors. The duties include marshalling, protecting, preserving and administering assets.

- **State Court Receiverships** – A state court receiver is appointed by the court to take possession of specified assets, including property or businesses, and administer those assets in accordance with court orders for the benefit of the parties involved. State court receiverships are employed as an alternative to bankruptcy, in resolving business disputes, enforcing judgements or under state regulatory actions.

Bates Group has the skills, insight and experience to assist investors by quantifying damages, tracing assets to provide restitution and working with regulators/investigative and law enforcement agencies/insurers to assist in fact finding, identifying internal control failures and assessing their resultant impact on the investors and financial institutions. This includes working with either the investors or class action counsel to prepare proof of claims, assisting in the accurate and timely filing of appropriate tax forms for losses, and other necessary support roles and activities.

## About Bates

In addition to our well-known service offerings in securities litigation consulting, Bates Group has developed end-to-end, client-centered services and solutions to ensure that our clients, both nationally and internationally, are receiving exceptional support in all challenges they face during the lifecycle of their legal matters. Whether that begins with an internal or regulatory investigation requiring a response, retail or institutional litigation requiring forensic and damages consulting, or ultimately a compliance review and solutions, Bates Group has the fraud investigation, forensic accounting, valuation, big data, economic modeling and e-discovery expertise to help complete your case efficiently and correctly.

## Our Team

Bates Group's team of professionals and experts bring decades of practical senior regulatory, legal, compliance and business experience to bear on behalf of clients in regulatory, compliance, and litigation matters. Our team of highly credentialed practitioners, including individuals who have earned such designations as Certified Public Accountant, Chartered Accountant, Certified Fraud Examiner, Chartered Financial Analyst and Certified Valuation Analyst, are leveraged by our clients to conduct or participate in sensitive and complex regulatory and internal investigations. Our regulatory practice team has worked closely with regional and multi-national financial services corporations, major law firms, and federal and state regulators on hundreds of complex financial and securities industry cases.

We are often called upon to examine large datasets in conducting our investigations, or in assisting counsel or regulators in evaluating their own analysis. Our team includes individuals who bring a unique mix of financial industry knowledge and data science capabilities, which enables us to generate the highest possible added value for our clients. Whether it's a large-scale insider trading investigation or a focused examination into specific transactions and/or events, we use experienced programmers and forensic experts with financial industry, fraud examination and accounting backgrounds to form an effective team. Bates Group plays an integral role in helping parties understand the nature of the data set being examined and presents its results in a format that the parties can easily interpret and explain.

## Competitive Advantage

Due to our broad range of experience and expertise, Bates Group is able to perform almost all required work in-house, saving both time and money, including tasks involving corporate accounting, forensic accounting, case administration, claims administration, asset valuation, investor communication and internet technology.

Bates Group's billing philosophy is to leverage work down to the staff member with the lowest bill rate that also has the skills and experience necessary to complete the task at a high level. This allows us to minimize the cost to complete all work associated with the case, ensuring a maximum return to stakeholders involved in the matter while also preserving the quality of our work product.

## Fiduciary Experience

### Securities and Exchange Commission – Receivership Cases

- *Securities and Exchange Commission v. Health Maintenance Centers, Inc. et al.*, United States District Court for the Western District of Washington at Seattle. An operator of medically integrated health clubs was accused of selling unregistered securities raising in excess of $91 million from 7,000 investors over seven years, with most of the money being misappropriated to finance a grossly extravagant lifestyle for the accused fraudsters in what was called the largest stock fraud in Washington State history. From assets of $47,000 at appointment, more than $30 million was recovered and disbursed to investors.

- *Securities and Exchange Commission v. C. Wesley Rhodes and Rhodes Econometrics, Inc. et al.*, United States District Court for the District of Oregon at Portland. Investment advisor that was accused of using a Ponzi scheme to steal $36 million from just over 80 investors. The funds were found to have been used to purchase expensive property, collector cars, jewelry and to pay for an extravagant wedding and vacations.

- *Securities and Exchange Commission v. Global Online Direct, Inc. et al.*, United States District Court for the Northern District of Georgia at Atlanta. The SEC sought a corporate monitor to review the business activities of two farmers purporting to be operating a successful distressed merchandise resale business. Once onsite, it was quickly determined that no beneficial activities were occurring and the business was actually operating as a Ponzi scheme, having solicited nearly $45 million dollars in unregistered investments from over 10,000 domestic and international investors. The case was converted to a receivership and the assets were liquidated for the benefit of investors.

- *Securities and Exchange Commission v. Sunwest Management, Inc. et al.*, United States District Court for the District of Oregon at Eugene. The SEC sought a receivership and turnaround professional after they alleged that a large operator of retirement care facilities in 34 states was operating as a Ponzi-like scheme. In all, the company was accused of defrauding over 12,000 investors and creditors for $1.1 billion in claims. Ultimately, the company was placed into bankruptcy to shed unprofitable investments and then restructured and sold, leading many of the investors to receive more than 100 percent of their original investment.

### Securities and Exchange Commission – Corporate Monitor Cases

- *Securities and Exchange Commission v. Alexander James Trabulse and Fahey Fund, L.P. et al.*, United States District Court for the Northern District of California at San Francisco. Hedge fund manager accused of using clients' money to pay for personal expenses. There were in excess of 100 clients that had invested over $10 million. An investment ledger was provided, but it contained significant missing information and a full forensic accounting was required.

- *Securities and Exchange Commission v. Global Online Direct, Inc. et al.*, United States District Court for the Northern District of Georgia at Atlanta. Started as a corporate monitor and converted to a receivership. See above for details of the case.

### Federal Trade Commission – Receivership Cases

- *Federal Trade Commission v. Fortuna Alliance et al.,* United States District Court for the Western District of Washington at Seattle. This was an international case that operated an Internet Ponzi scheme based in Bellingham, Washington. We took immediate possession and control of business locations and intercepted domestic and foreign cashier's checks worth millions of dollars. We uncovered and drilled multiple safe deposit boxes, from which we seized hundreds of thousands more in international money orders. Other actions included assisting the FTC and U.S. Attorney in seizing funds in Antigua and uncovering the purchase of an island offshore near Belize, part of the perpetrator's scheme to establish its own bank.

- *Federal Trade Commission v. Merchant Processing, Inc. et al.,* United States District Court for the District of Oregon at Portland. A credit card processing company was accused of unlawful trade practices by offering misleading and altered contracts. We took possession of the business, replaced all fraudulent contracts, wound down a dog racing operation, filed delinquent tax returns and ultimately sold the business, allowing us to make all victims whole and writing a multi-million dollar check to the U.S. Treasury.

- *Federal Trade Commission v. Mutual Consolidated Savings, Inc. et al.,* United States District Court for the Western District of Washington at Tacoma. A business offering credit card consolidation services was accused of charging large fees while failing to assist most consumers, leaving them with more debt than before working with the company. Ultimately, we shut down and liquidated the business and calculated the total loss for consumers of the business.

- *Federal Trade Commission v. Consumer Advocates Group Experts, LLC et al.,* United States District Court for the Central District of California at Los Angeles. A company was accused of predatory practices through its mortgage assistance programs. In reality, the business charged consumers large up-front fees and provided little to no assistance with their mortgages. Ultimately, we shut down and liquidated the business and calculated the total loss for consumers of the business.

These are just some of the many cases that Bates Group's team of professionals has successfully completed for clients. If you need assistance with a specific issue, or if you suspect that you might have a problem, please contact Geoff Winkler, Bates Group's Director of Fraud and Forensic Investigations, to discuss how Bates can help you achieve a successful resolution.

## FOR MORE INFORMATION, PLEASE CONTACT:

Geoff Winkler

Director, Fraud and Forensic Investigations

Direct Line: (971) 250-4323

gwinkler@batesgroup.com

Bates Group LLC
5005 SW Meadows Road, Suite 300
Lake Oswego, OR  97035, United States
(503) 670-7772 Toll Free: (888) 960-2809
www.batesgroup.com | contact@batesgroup.com



 # FRAUD AND FORENSIC INVESTIGATIONS

Within the context of responsible management and effective leadership, organizations must consider the risks of fraud and malfeasance and how the consequences of these actions can impact stakeholders, enterprise value, and future operations. The typical organization loses 5% of revenues to fraud each year, but by implementing policies and procedures to prevent, deter, and detect fraud as part of an overall anti-fraud strategy, companies can work to reduce the likelihood of fraud and limit the financial and reputational impact when fraud occurs.

Bates Group's Fraud and Forensic Investigations Practice, through our consultants and experts, offers a valuable combination of industry and technical expertise, providing value to our legal and financial industry clients facing internal investigations, regulatory inquiries or investigations, complex litigation and regulatory enforcement matters. Below are some of the services we offer as part of our Fraud and Forensic Investigations practice.

## FRAUD PREVENTION & DETERRENCE

### RISK ASSESSMENT

We have created a comprehensive program to prevent and deter fraud within your organization by first assessing your risks, initially focusing on policies, procedures and internal controls.

### FRAUD AWARENESS TRAINING

Because we know that over 50% of all frauds are discovered by employees, Bates fortifies this line of defense by providing advanced fraud awareness training to employees and management.

### POLICY IMPLEMENTATION

Bates also assists in drafting and implementing policies and procedures, including "tone at the top," hiring and HR procedures and whistleblower guidelines, to help prevent or minimize the potential occurrence and impact of fraud.

### TRANSACTION MONITORING

Bates also creates automated surveillance systems within your organization that will continually monitor key business areas to alert management of potential fraud.

### COMPLIANCE AUDITS / REVIEW / STAFF TRAINING

To ensure that the preventative measures we put in place continue to effectively serve your organization, we schedule future compliance reviews and continuing fraud education and training/awareness, as well as review and update fraud detection systems as needed to ensure compliance with regulatory rules and regulations.



Bates Group LLC
5005 SW Meadows Road, Suite 300
Lake Oswego, OR  97035, United States
(503) 670-7772 Toll Free: (888) 960-2809
www.batesgroup.com  |  contact@batesgroup.com

# FRAUD INVESTIGATION & DETECTION

### INTERNAL/EXTERNAL INVESTIGATIONS

Whether it's a large-scale insider trading investigation or a focused examination into the propriety of specific transactions and/or events, Bates Group offers a valuable team of experts with financial industry, fraud examination and accounting backgrounds and experience, allowing management and its counsel to be in command of the facts in order to make the best-informed decisions.

### INTERVIEWING

The difference between quickly resolving a matter and having it linger for years often comes down to having the right people who know the precise questions to ask at the proper time. Bates Group consultants have years of experience in investigative interviewing techniques, ensuring that we have the skills needed when your next matter arises.

### BIG DATA ANALYTICS (DATA MINING, ANALYSIS AND TESTING)

Bates Group provides consulting services involving large and complex datasets, including working with datasets containing billions of records. Using state-of-the-art technology we follow an efficient and cost-effective approach to assist in navigating the discovery process, performing data diagnostics, and conducting statistical and empirical analysis. Our experience minimizes the efforts required from your data personnel and will ensure data integrity throughout the process.

### FORENSIC ACCOUNTING

Bates has the skill, insight and experience to assist our clients by quantifying damages and tracing assets providing insight in support of fact finding, identifying internal control failures and assessing their resultant impact on financial institutions and their clients through the use of forensic accounting.

# FRAUD RECOVERY

### ASSET TRACING

Bates Group's dedicated team, including former senior legal and compliance officers, has extensive hands-on experience in tracing assets. Making full use of custom tools and reports developed by our top-tier IT team and using some of the best software available, we have demonstrated our ability to quickly trace assets and help uncover attempts to commit fraud while also allowing us to clearly present asset flows to regulators, arbitration panels, juries, law enforcement, or other audiences through advanced visualization techniques.

### ECONOMIC AND OTHER DAMAGES

Bates Group experts provide economic damages analyses and opinions in many dispute resolution forums where such damages arise from lost profits, lost future wages, and loss of support claims. Our practitioners are experts in generally accepted industry practices and benchmarks for estimating damages in these types of claims, as well as best practices in documenting and supporting the calculated figures. Often, we help counsel by ensuring that the appropriate supporting documents are obtained and help separate necessary data from irrelevant information in making these calculations.

### EXPERT WITNESS CONSULTING

Our nationwide roster of over 100 quantitative and substantive consultants and experts have diverse backgrounds, giving Bates a deep and broad variety of expertise, including retail, institutional, complex securities and other financial service matters, spanning over 250 unique areas of expertise.

## ANTI-MONEY LAUNDERING (AML) INVESTIGATION

### REGULATORY RESPONSE

Bates Group has successfully assisted major financial institutions in response to inquiries and investigations from regulatory agencies. Many of our consultants have previously worked for regulatory agencies, providing unique insights to achieve the best possible results for our clients.

### LOOK-BACK INVESTIGATIONS

Whether due to regulatory inquiry, enforcement matter, or a self-initiated review, a look-back review of customer transactions is sometimes necessary to correct deficiencies in investigations or transactional monitoring. Bates Group has placed dozens of AML investigators into our financial institution clients within days to assist with their AML alert, sanction, OFAC and other related investigations.

### BUSINESS AS USUAL INVESTIGATIONS

Similar to look-back investigations, Bates Group has the ability to place dozens of AML investigators in your financial institution within days to assist with AML investigations involving negative news, fraud, regulatory subpoena, free looks and transactional analysis.

## FIDUCIARY AND RELATED SERVICES

**CORPORATE MONITORSHIPS** – Regulators frequently require appointment of an independent corporate monitor to ensure compliance with the terms of a settlement between the company and the regulator. The appointment of a monitor allows a company to take corrective actions pursuant to a regulatory settlement in place of more severe punishment or fines. Bates Group has considerable experience serving as an independent monitor while also minimizing the impact on the operating business.

**TURNAROUND AND RESTRUCTURING** – In order to provide assurance to customers and creditors, a turnaround and restructuring professional is brought into a company to help identify key business risks and opportunities, review and stabilize financial operations, provide liquidity projections, negotiate with lenders to restructure debt, and create a post-turnaround restructuring plan as a blueprint for effective ongoing operations.

**TRUSTEE IN BANKRUPTCY** – A trustee in bankruptcy is an independent party appointed to administer a bankrupt estate for the benefit of all parties involved. As trustee, Bates Group has the experience to marshal, protect, preserve, and administer assets in bankruptcy.

**STATE COURT RECEIVERSHIPS** – A state court receiver is appointed by the court to take possession of specific assets, including property or businesses, and administer those assets for the benefit of the parties. State court receiverships are often used as an alternative to bankruptcy, in a business dispute, to enforce a judgement, or pursuant to a state regulatory action. Bates Group has broad experience in many different types of state court receivership matters.

**FEDERAL EQUITY (REGULATORY) RECEIVERSHIPS** – A federal equity receiver is an independent party appointed by a federal district court at the request of a regulatory agency to prevent irreparable harm. Once appointed, the receiver is usually charged by the court to protect and preserve assets, locate additional assets, claw-back ill-gotten gains, initiate third party litigation, liquidate assets, establish a claims procedure and develop a distribution plan to provide restitution to victims. Bates Group has significant experience working receivership cases with the Department of Justice, the Federal Trade Commission and the Securities and Exchange Commission.

## CASE EXAMPLES

A hedge fund requested a fraud risk assessment as part of their SOX implementation process. The team of fraud risk specialists met with members of the legal, finance, investment and accounting departments to brainstorm possible fraud schemes to which the company might be subject. We then ranked the client's perception of the likelihood and potential impact of these schemes and prepared a "heat map" showing the results of these rankings. The final product was a comprehensive plan, allocating anti-fraud resources to address these threats on a risk-adjusted basis. This enabled the client to use existing resources to gain greater comfort that the fraud risks were being effectively identified and managed.

Our Investigations team has searched through millions of pages of documents for evidence of backdated stock option grants; considered thousands of records to determine whether investors were sold the correct mutual fund share classes; reviewed the records of financial conduct of a very large number of brokers and advisors; examined loan portfolios to ensure that lending standards were applied equally to all applicants; audited financial records searching for evidence of channel stuffing; and verified completion cost estimates for large construction projects.

A private equity firm with an investment in an energy company sent a team of forensic accountants to review the financial reporting function because their monthly performance reports showed inconsistent results, despite rising costs. The investigation revealed that there were no financial reporting controls and the Finance Director was preparing fraudulent reports to disguise that the company was losing money. The Director was replaced and new controls were implemented, enabling the portfolio company to reduce costs, dispose of excess assets and return a profit, ultimately being sold at a premium.

Bates Group sent a team of AML investigators to assist a client with a regulatory inquiry regarding thousands of negative news, free look and fraud transactions going back three years to determine if Suspicious Activity Reports (SARs) should have been filed or if the cases were appropriately closed. We helped the client quickly assess the potential scope of cases that should have, but did not, have a SAR filed.

The Department of Justice appointed a successor trustee over a chain of 17 gas stations and convenience stores in bankruptcy. The company had previously been operated by the debtor-in-possession and was experiencing severe operational and financial troubles, which required us to work with vendors to ensure product availability, renegotiate leases, secure new lines of credit, and fix environmental issues, culminating in the sale of assets once operations improved and maximum value was achieved.

The Securities and Exchange Commission (SEC) sought a monitor to review the business activities of two farmers purporting to be operating a successful distressed merchandise resale business. Once onsite, it was quickly determined that no beneficial activities were occurring and the business was actually operating as a Ponzi scheme, having solicited nearly $45 million dollars in unregistered investments from over 10,000 investors. At the request of the SEC, the case was converted to a receivership and the assets were liquidated for the benefit of investors.

The SEC sought a receivership and turnaround professional after they alleged that a large operator of retirement care facilities in 34 states was operating as a Ponzi-like scheme. In all, the company was accused of defrauding over 12,000 investors and creditors for $1.1 billion in claims. Ultimately, the company was placed into bankruptcy to shed unprofitable investments and then restructured and sold, leading many of the investors to receive their entire principal investment plus interest.

These are just a few of the many cases that Bates Group has successfully completed for our clients. If you need assistance with a specific issue, or if you suspect that you might have a problem, please contact our practice leaders Geoff Winkler and Scott Lucas to discuss how Bates can help you achieve a successful resolution.

## CONTACTS

Geoff Winkler
Director, Fraud and Forensic Investigations
Direct Line: (971) 250-4323
gwinkler@batesgroup.com

Scott Lucas
Managing Director, Regulatory and Internal Investigations
Direct Line: (971) 250-4344
slucas@batesgroup.com

Bates Group LLC
5005 SW Meadows Road, Suite 300
Lake Oswego, OR  97035, United States
(503) 670-7772 Toll Free: (888) 960-2809
www.batesgroup.com  |  contact@batesgroup.com



# <u>PROOF OF SERVICE</u>

I am over the age of 18 years and not a party to this action.  My business address is:

      U.S. SECURITIES AND EXCHANGE COMMISSION,
      444 S. Flower Street, Suite 900, Los Angeles, California 90071
      Telephone No. (323) 965-3998; Facsimile No. (213) 443 -1905.

On June 5, 2018, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RECOMMENDATION THAT GEOFF WINKLER BE APPOINTED RECEIVER** on all the parties to this action addressed as stated on the attached service list:

☐   **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐   **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐   **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☒   **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐   **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐   **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒   **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐   **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

      I declare under penalty of perjury that the foregoing is true and correct.

Date: June 5, 2018

                          */s/ Gary Y. Leung*
                          GARY Y. LEUNG

1
2

**SEC v. RALPH T. IANNELLI, et al.**
**United States District Court—Central District of California**
**Case No. 2:18-cv-05008**

3
4

**SERVICE LIST**

5
6

Ralph T. Iannelli
1486 East Valley Road
Montecito, CA 93108

7
8

Essex Capital Corporation
1486 East Valley Road
2nd Floor
Montecito, CA 93108

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28