DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
NORMAN M. ASPIS (BAR NO. 313466)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        naspis@allenmatkins.com

Attorneys for Receiver
GEOFF WINKLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RALPH T. IANNELLI and ESSEX CAPITAL CORP.,<br><br>Defendants. | Case No. 2:18-cv-05008-FMO-AFM<br><br>SIXTH INTERIM REPORT AND PETITION FOR FURTHER INSTRUCTIONS OF RECEIVER, GEOFF WINKLER<br><br>Date: January 7, 2021<br>Time: 10:00 a.m.<br>Ctrm: 6D<br>Judge Hon. Fernando M. Olguin |

**TO ALL INTERESTED PARTIES, THEIR COUNSEL OF RECORD, AND THIS HONORABLE COURT:**

**PLEASE TAKE NOTICE THAT**, in accordance with this Court's December 21, 2018 Order Regarding Preliminary Injunction and Appointment of a Permanent Receiver (the "Appointment Order") (ECF No. 66), its February 1, 2019 Order in Aid of Receivership (the "Order in Aid") (ECF No. 69), and its September 9, 2019 Order Regarding Permanent Injunction (the "Permanent Injunction") (ECF No. 113), Geoff Winkler (the "Receiver"), the Court-appointed permanent receiver for Defendant Essex Capital Corporation ("Essex") and its subsidiaries and affiliates (collectively, the "Receivership Entities" or "Entities"),

hereby submits the following Sixth Interim Report and Petition for Further Instructions (the "Report") for the period from June 1, 2020 through November 30, 2020 (the "Reporting Period").

## I. PRELIMINARY STATEMENT.

As reflected in the Receiver's First Interim Report and Petition for Further Instructions (the "First Report") (ECF No. 78); Second Interim Report and Petition for Further Instructions (the "Second Report") (ECF No. 103); Third Interim Report and Petition for Further Instructions (the "Third Report") (ECF No. 123); Fourth Interim Report and Petition for Instructions ("Fourth Report") (ECF No. 149); Fifth Interim Report and Petition for Instructions and Supplement to Fifth Interim Report and Petition for Instructions (collectively, the "Fifth Report") (ECF Nos. 174 and 185), the Receiver continues to make substantial progress in his efforts to identify, marshal, and administer the available assets of the Receivership Entities ("Receivership Assets" or "Assets"). Since the submission of the Fifth Report, and by way of chronological summary, the Receiver's most significant efforts included:

- Completing his forensic accounting of the business and financial activities of the Receivership Entities, and submitting his Forensic and Investigative Accounting Report (the "Accounting Report") (see ECF No. 171). As reflected in the Accounting Report, the Receiver confirmed that, among other things: (1) the Entities' principal sources of funding were investment and loans; (2) the Entities' operations resulted in significant losses; (3) the Entities' operations were unsustainable absent new inflows of investor and other funds, which money was used in many cases to repay debts owing to earlier investors; and (4) Defendant Ralph Iannelli diverted money received from investors for apparently personal uses;

- Negotiating and securing Court approval of a settlement relating to Amagansett Partners, LLC ("Amagansett"), an entity created to address

certain outstanding investor payment obligations, which settlement resulted in the payment to the Receiver of gross settlement proceeds in the amount of $150,000 (see ECF Nos. 172, 178)

- Preparing the Fifth Report (see ECF Nos. 174 and 185);
- Securing Court approval of his proposed claims procedures (see ECF Nos. 168, 179), and thereafter commencing procedures intended to permit investors and other creditors who believed they suffered losses as a result of their investments in or contributions to the Entities to register their claims with the Receiver;
- Completing his analysis of materials relating to services provided by a pre-receivership law firm, Seed Mackall LLP (Seed Mackall), and thereafter requesting and securing Court authority to prosecute claims against Seed Mackall (see ECF Nos. 184, 186);
- Commencing an action against Seed Mackall in the matter styled Winker v. Seed Mackall LLP, pending before this Court as Case No. 2:20-cv-8323 (the "Seed Mackall Action"), and thereafter defending against a Motion to Dismiss brought by Seed Mackall, which motion has not yet been decided by the Court;
- Petitioning for and securing Court approval of his proposed procedures for pursuing disgorgement from suspected profiting investors and others in receipt of ill-gotten gains, subject to disgorgement as Assets (see ECF Nos. 190, 195);
- Bringing his administration of Entity equipment leases to a close, which efforts yielded more than $2.2 million in gross lease revenues since the inception of the receivership, and nearly $1.5 million in gross buyout revenue since the inception of the receivership, including more than $160,000 in the Reporting Period;

- Commencing his review of timely claims submitted in accordance with the Court-approved claims procedures; and

- Commencing his efforts to recover Assets subject to disgorgement, including via initial demand letters to certain profiting investors.

In addition to the above, the Receiver continues to administer the remaining assets of the Estate, and, as of the date of his latest Standardized Fund Accounting Report ("SFAR"), held approximately $3.4 million, in cash, for the administration and benefit of the Receivership Entities.

## II.  RELEVANT PROCEDURAL HISTORY.

The Receiver invites the Court and all interested parties to review the following materials[1] for a general summary of the relevant facts and procedural background relating to the subjects addressed in this Report:

- Commission's Complaint, filed on June 5, 2018 (ECF No. 1);
- Essex's Answer to the Complaint, filed on August 1, 2018 (ECF No. 37);
- The Appointment Order, entered on December 21, 2018 (ECF No. 66);
- Order in Aid, entered on February 1, 2019 (ECF No. 69);
- Mediation Report, filed on April 5, 2019 (ECF No. 74);
- First Report, filed on April 30, 2019 (ECF No. 78);
- Final Judgment as to Defendant Ralph T. Iannelli, entered on June 5, 2019 (ECF No. 93);
- Second Report, filed on August 14, 2019 (ECF No. 103);
- Judgment Against Defendant Essex, entered on September 9, 2019 (ECF No. 110);
- Permanent Injunction, entered on September 9, 2019 (ECF No. 113);
- Third Report, filed on November 18, 2019 (ECF No. 123);

---

[1] These materials, and others, are available on the Receiver's website, www.essex-receivership.com.

- Fourth Report, filed on March 2, 2020 (EFC No. 149);Stipulation for Order: (1) Establishing Claims Procedures; and (2) Setting Claims Bar Date, filed on April 20, 2020 (ECF No. 168) and Order therein (ECF No. 179);

- Motion for Order Approving and Authorizing Performance of Settlement Agreement, filed on June 11, 2020 (ECF No. 172), and Order therein (ECF No. 178);

- Fifth Report, filed on July 24, 2020, with a supplement filed on August 12, 2020 (ECF Nos. 174, 185);

- Motion for Authority to Prosecute Claims Against Seed Mackall LLP , filed on August 10, 2020) (ECF No. 184) and Order thereon (ECF No. 186);

- Stipulation to Authorize Receiver's Sale of Leased Assets, Free and Clear of Liens and Encumbrances, filed on September 23, 2020) (ECF No. 188) and Order therein (ECF No. 188)

- Motion for Authority to Establish Disgorgement Procedures and Undertake Disgorgement Efforts, filed on October 13, 2020 (ECF No. 190) and Order therein (ECF No. 195).

### III. RECEIVER'S ACTIVITIES AND EFFORTS SINCE THE FIFTH REPORT.

Of the tasks identified above, the Receiver's most critical undertakings during the Reporting Period include:

### A. Asset Identification, Administration, Recovery, And Monetization.

As of the date of his most recent SFAR, attached hereto as **Exhibit 1**, the Receiver held a total of approximately $3.4 million, in cash, for the administration and benefit of the Receivership Entities. In addition, he continues to hold and administer non-cash Assets, the value of which he has estimated at approximately $22 million, inclusive of prospective third-party recoveries. In addition to the cash

and non-cash Assets already in the Receiver's possession, the Receiver has identified the following as Assets of the receivership estate (the "Estate"), subject to the Receiver's authority under the terms of the Permanent Injunction:

    1.    <u>915 Elm Avenue CVL, LLC-associated notes and repayment obligations.</u>

During and before the Reporting Period, the Receiver reviewed numerous transactions relating to 915 Elm Avenue CVL, LLC ("CVL"), an LLC created in November 2015, by and between Defendant Ralph Iannelli and another individual, William S. Reyner, Jr., to purchase, own, and operate a hardware and building materials store in Carpinteria, California, along with its associated personal and real property (collectively, the "Lumber Yard"). Based on his review of the available materials, the Receiver concluded that CVL's purchase of the Lumber Yard was funded in large part by transfers from Essex and a note in the principal amount of $1.5 million (the "Gally Note"), payable by Essex – which had no interest in CVL – to J&G Clay Properties, LLC and its principal, James Gally (collectively, "Mr. Gally"). Contemporaneously with the Gally Note, CVL executed a companion note (the "CVL Note") in the amount of $1.5 million, payable to Essex and which was intended to repay Essex for its extension of credit and obligation to repay the Gally Note. CVL later issued Essex a second note (the "Second CVL Note") in the amount of $125,000, along with another note in the amount of $125,000 payable to Mr. Iannelli, and which the Receiver's analysis indicates was funded with money from the Receivership Entities.

The CVL Note matured on January 14, 2019 and is also now in default. The Second CVL Note is payable on demand. CVL has contested its repayment obligations to Essex in connection with the CVL Note and the Second CVL Note, each of which is now in default. Over and above the payment obligation incurred by Essex to Mr. Gally, and Essex's attendant right to be repaid by CVL, the Receiver further confirmed that an estimated $1.1 million was diverted from Essex accounts

and transferred for the benefit of CVL. In total, over $2,100,000 in Essex funds and obligations were used and incurred in connection with CVL.

The Court previously authorized the Receiver to commence an action against CVL (see ECF No. 177). As of the date of this Report, the Receiver has not filed his anticipated Complaint against CVL, instead electing to make efforts to settle his dispute with CVL out-of-court, if possible, in order to reduce costs to the Estate. Should those discussions fail to yield an agreement in the near term, the Receiver anticipates commencing litigation in accordance with the Court's prior order.

### 2. Amagansett.

As set forth in the Receiver's prior submissions regarding Amagansett, Amagansett was formed in 2018, purportedly as a mechanism for Essex to restructure pre-existing debt obligations to an investor. Pursuant to Amagansett's Operating Agreement, as amended, Essex was obligated to deposit certain illiquid securities with Amagansett, and the investor was to deposit outstanding promissory notes issued to Essex. Upon their respective contributions, the notes were to be cancelled, and Essex's Amagansett capital account was to be reduced to zero. Thereafter, pursuant to Amagansett's Operating Agreement, proceeds from the illiquid securities were to be split between Essex and the individual investor, with the apparent intent of repaying Essex's prior debt to the investor over time.

Before and during the Reporting Period, the Receiver diligently pursued his Money-In / Money-Out ("MIMO"), or netting, accounting of Amagansett and the investor in question. After extensive negotiation, the parties entered into an agreement which provided, in pertinent part, for the payment of $150,000 to the Receiver in exchange for a release of his claims. The Court approved this settlement on July 29, 2020 (see ECF No. 178), and the payment was made to the Receiver on August 5, 2020.

### 3. Receivership Entity Leases.

The Receivership Entities are presently parties to one active equipment lease as of the date of the filing of this Report, which was financed by Montecito Bank & Trust ("MBT"). Pursuant to its rights under its financing agreements, MBT is presently acting as a *de facto* servicer for the lease, collecting payments from the lessee and remitting lease revenue (less funds sufficient to cover the Entities' loan payments to MBT) to the Receiver. During the Reporting Period, the Receiver continued to coordinate with MBT to ensure that its processes for loan servicing remain consistent with the fiduciary nature of the Receiver's appointment including, but not limited to, MBT's preparation and production of monthly reconciliations, and MBT's retention of loan payments and other funds.

The Receiver also wound down his administration of the Entities remaining equipment leases, which have accounted for more than $2.2 million in gross lease revenue income since the inception of the receivership. As previously reported, the Receiver arranged buyouts of leased Assets at the termination of a number of leases, generating over $1.49 million in additional gross revenue for the administration and benefit of the Receivership Entities, as of the date of this Report.

### 4. Profiting Investors.

As reflected in some of the Receiver's prior submissions to the Court, including his Accounting Report, the Receiver has concluded that the business and financial activities of the Entities bear the hallmarks of a Ponzi investment scheme, including, most critically, improper commingling of funds and the use of money from new investors to pay obligations owed to earlier investors. (See, e.g., ECF No. 171.) In the Ponzi scheme context, "the general rule is that to the extent innocent investors have received payments in excess of the amount of principal that they originally invested, those payments" are subject to disgorgement to the Receiver as fraudulent transfers. Donell v. Kowell, 533 F.3d 762, 770 (9th

Cir. 2008). The Receiver has identified numerous Receivership Entity investors whom he believes profited from their investments in the Entities.

On November 12, 2020, this Court approved the Receiver's proposed procedures for pursuing disgorgement from profiting investors and others who may have received ill-gotten gains as a result of their dealings with the Receivership Entities (see ECF No. 195). As of the date of this Report, the Receiver has commenced issuing demand letters to profiting investors and will, in accordance with the procedures established by the Court, commence disgorgement litigation against profiting parties if necessary.

### 5. The Seed Mackall Action.

On September 2, 2020, this Court authorized the Receiver to commence the Seed Mackall Action (see ECF No. 186). Thereafter, on September 11, 2020, the Receiver filed his Complaint in the Seed Mackall Action, alleging causes of action arising from services provided by Seed Mackall to Essex in connection with the formation of CVL and CVL's acquisition of the Lumber Yard, along with associated benefits that flowed to CVL and Mr. Iannelli at Essex's expense. On October 20, 2020, Seed Mackall moved to dismiss the Receiver's Complaint, and the Receiver submitted an opposition to Seed Mackall's motion on October 29, 2020. The motion to dismiss was not decided at the time of this Report's submission to the Court.

### B. Submission Of The Accounting Report.

The Receiver completed the accounting and analysis underlying the Accounting Report prior to the Reporting Period. However, he finalized his preparation of and filed the Accounting Report on June 11, 2020 (see ECF No. 171). The Accounting Report provides a summary of his accounting conclusions, with presentations of data underlying specific actions undertaken by the Receivership Entities and their principal, Mr. Iannelli. The Forensic Accounting Report was later filed with this Court, on June 11, 2020. (See ECF No. 171.) Among other things, the Forensic Accounting Report identifies the total amount of funds raised from

investors and other sources, as well as their disposition, including: (1) significant diversion of Entity funds by Mr. Iannelli for apparently personal purposes; (2) payments of returns in excess of principal investment amounts to certain investors; and (3) use of funds obtained from later investors to pay obligations outstanding to earlier investors. (Id.)

### C.  Attending To Pre-Receivership Litigation.

There are two (2) matters pending before the Superior Court of California, County of Santa Barbara, both of which are stayed pursuant to the Permanent Injunction: (1) Gabler v. Essex Capital Corp., et al., Santa Barbara Superior Court Case No. 18CV03423 (the "Gabler Action"); and (2) Dennis v. Iannelli, et al., Santa Barbara Superior Court Case No. 18CV03317 (the "Dennis Action").

The plaintiff in the Gabler Action has alleged that defendants Melissa Iannelli, Ralph Iannelli, and Essex breached the terms of a promissory note, pursuant to which the plaintiff allegedly loaned $2.2 million to Essex. The plaintiff in the Dennis Action alleges that defendants Ralph Iannelli and Essex operated a fraudulent investment scheme, and seeks relief upon a number of tort claims.

The Receiver and his counsel of record, Allen Matkins Leck Gamble Mallory & Natsis LLP, have continued to monitor the Gabler Action and the Dennis Action, and have informed the courts presiding over both actions of the litigation stay imposed by the Appointment Order and maintained by the Permanent Injunction, in order to protect and preserve the Estate from diminution. The Receiver will continue to monitor and, through counsel, make necessary appearances in the Gabler Action and the Dennis Action, and keep the courts presiding over those actions abreast of developments in the instant action, as appropriate.

### D.  Addressing Investor And Creditor Claims.

On July 31, 2020, this Court entered an order approving a stipulation by and between the Receiver and the Commission to establish claims procedures and a claims bar date (see ECF No. 179). Thereafter, an in accordance with the Court's

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1228937.03/LA                                -10-

instructions, the Receiver transmitted claims information to all investors and creditors whom he suspects lost money, on a MIMO basis, as a result of their investments in or contributions to the Receivership Entities, identifying his calculation of their net losses and inviting them to submit claims if they disputed his calculation. The Receiver also posted claims materials (including a claim form and instructions) to his website (www.essex-receivership.com), in order to enable any other person or entity (including suspected MIMO winners) to submit a claim. The claims bar date was November 30, 2020.

A total of seventy-two (72) timely claims were transmitted to the Receiver, comprised of sixty-two (62) claims from investors identified as net losers, four (4) claims from putative non-investor creditors, and six (6) claims from investors identified as net winners, for a total of just over $52 million in claims. A total of fifty-five (55) net-loser investor claimants signed off on the Receiver's estimation of their claims, reflecting a net-loser ratification rate for the Receiver's accounting of over 88%. Another seven (7) net-loser investors disputed the Receiver's calculations, and the Receiver is in the process of reviewing materials submitted in connection with the disputed claims. Likewise, the Receiver is reviewing the claims and supporting documentation submitted by suspected net-winners. Once his claims processing is completed, the Receiver anticipates submitting a motion to this Court reflecting his recommended treatment of claims, including his recommendations regarding prospective distributions on allowed claims. The Receiver expects this motion to be submitted to the Court prior to the end of the second quarter, 2021.

### E. Communications With Investors And Other Interested Parties.

In accordance with the Order in Aid, the Receiver continues to maintain a receivership website for this matter, which, among other things, he uses as a means of communicating with Receivership Entity investors. Specifically, the Receiver posts all of his filings to the website, which also includes a portal through which investors and other interested parties may register to receive email notice of such

filings. The Receiver will continue to post additional updates to the website as they become relevant and available.

### IV. CONCLUSION AND PETITION FOR FURTHER INSTRUCTIONS.

Assuming the Court approves this Report and authorizes the Receiver to undertake the actions recommended herein, as well as to continue those actions provided for in the Appointment Order, the Order in Aid, and the Permanent Injunction, the Receiver proposes to submit a further interim report to this Court, addressing his progress, findings, conclusions, and additional recommendations, in approximately 90-120 days.

Accordingly, and based on the foregoing, the Receiver respectfully requests that the Court enter an order:

1. Accepting this Report;

2. Authorizing the Receiver to continue to administer the Receivership Entities and their Estate in accordance with the terms of the Appointment Order, the Order in Aid, and the Permanent Injunction; and

3. Providing such other and further relief as the Court deems necessary and appropriate.

Dated: December 8, 2020

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
NORMAN M. ASPIS

By:     /s/ *Joshua A. del Castillo*
    JOSHUA A. DEL CASTILLO
    Attorneys for Receiver
    GEOFF WINKLER

**VERIFICATION**

I have read the foregoing SIXTH INTERIM REPORT AND PETITION FOR FURTHER INSTRUCTIONS OF RECEIVER, GEOFF WINKLER, and know its contents.

I am the Receiver appointed in the above-entitled action. I believe the matters stated in the foregoing document are true, to the best of my knowledge.

Executed on December 8, 2020, at Salem, Oregon.

_____
Geoff Winkler, Receiver

# EXHIBIT 1

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Essex Capital Corporation**
Receivership; Civil Docket No. 18-cv-05008-FMO-AFM
Reporting Period from 04/01/2020 to 11/30/2020

| | | Detail | Subtotal | Grand Total |
|---|---|---:|---:|---:|
| **FUND ACCOUNTING (See instructions)** | | | | |
| Line 1 | **Beginning Balance (As of 04/01/2020):** | $ 2,314,668.29 | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | $ 38,504.90 | | |
| Line 3 | Cash and Securities (in transit) | 52,758.71 | | |
| Line 4 | Interest/Dividend Income | 9,106.35 | | |
| Line 5 | Business Asset Liquidation | 161,452.00 | | |
| Line 6 | Personal Asset Liquidation | - | | |
| Line 7 | Third-Party Litigation Income | 1,075,000.00 | | |
| Line 8 | Miscellaneous - Other | - | | |
| | Total Funds Available (Lines 1 - 8): | | $ 1,336,821.96 | $ 3,651,490.25 |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | **Disbursements to Investors** | | | |
| Line 10 | **Disbursements for Receivership Operations** | | | |
| Line 10a | Disbursements to Receiver or Other Professionals | (223,236.91) | | |
| Line 10b | Business Asset Expenses | (4,446.70) | | |
| Line 10c | Personal Asset Expenses | - | | |
| Line 10d | Investment Expenses | - | | |
| Line 10e | Third-Party Litigation Expenses | - | | |
| | 1. Attorney Fees | $ (6,070.00) | | |
| | 2. Litigation Expenses | - | | |
| | Total Third-Party Litigation Expenses | | $ (233,753.61) | |
| Line 10f | Tax Administrator Fees and Bonds | | - | |
| Line 10g | Federal and State Tax Payments | | - | |
| | **Total Disbursements for Receivership Operations** | | | $ (233,753.61) |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator.................................................... | $ - | | |
| | Independent Distribution Consultant (IDC)............................. | - | | |
| | Distribution Agent..................................................... | - | | |
| | Consultants............................................................ | - | | |
| | Legal Advisers......................................................... | - | | |
| | Tax Advisers........................................................... | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | Total Plan Development Expenses | | $ - | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator.................................................... | - | | |
| | IDC.................................................................... | - | | |
| | Distribution Agent..................................................... | - | | |
| | Consultants............................................................ | - | | |
| | Legal Advisers......................................................... | - | | |
| | Tax Advisers........................................................... | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan............................................ | (1,197.00) | | |
| | Claimant Identification.................................................. | - | | |
| | Claims Processing...................................................... | - | | |
| | Web Site Maintenance/Call Center....................................... | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. Federal Account for Investor Restitution | | | |
| | (FAIR) Reporting Expenses | - | | |
| | Total Plan Implementation Expenses | | $ (1,197.00) | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | $ (1,197.00) |
| Line 12 | **Disbursements to Court/Other:** | | | |
| Line 12a | Investment Expenses/Court Registry Investment System (CRIS) Fees | $ - | | |
| Line 12b | Federal Tax Payments | - | | |
| | Total Disbursements to Court/Other: | | $ - | |
| | **Total Funds Disbursed (Lines 9 - 11):** | | | $ (234,950.61) |
| Line 13 | **Ending Balance (As of 11/30/2020):** | | | $ 3,416,539.64 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | Cash & Cash Equivalents | | 3,416,539.64 | |
| Line 14b | Investments | | 87,915.00 | |
| Line 14c | Other Assets or Uncleared Funds | | 16,077,136.75 | |
| | **Total Ending Balance of Fund - Net Assets** | | | $ 19,581,591.39 |

Exhibit 1
Page 14

**STANDARDIZED FUND ACCOUNTING REPORT for SEC v. Essex Capital Corporation**
Receivership; Civil Docket No. 18-cv-05008-FMO-AFM
Reporting Period from 04/01/2020 to 11/30/2020

| | OTHER SUPPLEMENTAL INFORMATION: | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund* | | | |
| | 1. Fees: | | | |
| |     Fund Administrator | $ - | | |
| |     IDC | - | | |
| |     Distribution Agent | - | | |
| |     Consultants | - | | |
| |     Legal Advisers | - | | |
| |     Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Miscellaneous | - | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | $ - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| |     Fund Administrator | $ - | | |
| |     IDC | - | | |
| |     Distribution Agent | - | | |
| |     Consultants | - | | |
| |     Legal Advisers | - | | |
| |     Tax Advisers | - | | |
| | 2. Administrative Expenses | - | | |
| | 3. Investor Identification: | | | |
| |     Notice/Publishing Approved Plan | - | | |
| |     Claimant Identification | - | | |
| |     Claims Processing | - | | |
| |     Web Site Maintenance/Call Center | - | | |
| | 4. Fund Administrator Bond | - | | |
| | 5. Miscellaneous | - | | |
| | 6. FAIR Reporting Expenses | - | | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | $ - | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | - |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund** | | | |
| Line 16a | *Investment Expenses/CRIS Fees* | | $ - | |
| Line 16b | *Federal Tax Payments* | | - | |
| | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | $ - |
| Line 17 | **DC & State Tax Payments** | | | $ - |
| Line 18 | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period | 0 | | |
| Line 18b | # of Claims Received Since Inception of Fund | 0 | | |
| Line 19 | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | 0 | | |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | 0 | | |

Receiver:     Geoff Winkler

By: _____

   Geoff Winkler
   (printed name)

**Chief Executive Officer**
**American Fiduciary Services LLC**
**Receiver, Essex Capital Corporation, et al.**

**Date: December 07, 2020**

Exhibit 1
Page 15

# PROOF OF SERVICE

*Securities and Exchange Commission v. Ralph T. Iannelli and Essex Capital Corporation*
USDC, Central District of California – Case No. 2:18-cv-05008-FMO-AFM

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **December 8, 2020**, I caused to be served on all the parties to this action addressed as stated on the attached service list the document entitled: **SIXTH INTERIM REPORT AND PETITION FOR FURTHER INSTRUCTIONS OF RECEIVER, GEOFF WINKLER**

☐ **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**: I deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, addressed as indicated on the attached service list, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**: I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**: By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **December 8, 2020** at Los Angeles, California.

/s/ *Martha Diaz*
Martha Diaz

1153214.96/LA

- 1 -